IN THE

# SUPREME COURT OF TENNESSEE

FOR THE

## EASTERN DIVISION.

SEPTEMBER TERM, 1921.

BRISTOL TELEPHONE CO. *et al. v.* WEAVER.

(*Knoxville.* September Term, 1921.)

1. MASTER AND SERVANT. Compensation Act held not to prevent employee's common-law action against negligent third person.

Under Workmen's Compensation Act, section 8, making the remedy granted exclusive, and providing in section 14 that an employee injured under circumstances creating in a person other than employer liability for damages may at his option either claim compensation or proceed against such person, an employee may maintain a common-law action against a third person whose negligence, concurring with that of employer, caused the injury. (*Post, pp. 518-524.*)

Acts cited and construed: Acts 1919, ch. 123; Comp. Acts, p. 139, sec. 167.

Cases cited and approved: Smale v. Wrought Washer Mfg. Co., 160 Wis., 331; Lester v. Otis El. Co., 90 Misc. Rep., 649; Hall v. Thayer & Co., 225 Mass., 151; Swain v. Tennessee Copper Co., 111 Tenn., 430; Electric Railway Co. et al. v. Shelton, 89 Tenn., 423; Peet v. Mills, 76 Wash., 437.

Bristol Telephone Co. v. Weaver.

2. **ELECTRICITY.** In death action evidence held to support verdict for decedent's representative.

In an action against an electric company for death of an employee of a telephone company by electrocution, due to defective insulation, evidence *held* to support a verdict for decedent's representative. (*Post, pp.* 524-527.)

Cases cited and approved: Nashville Interurban Railway Co. v. Gregory, 137 Tenn., 430; Street Railroad & Telephone Cos. v. Simmons, 107 Tenn., 392; Consolidated Gas & Electric Co.. v. Simpson, 109 S. W., 1155.

3. **ELECTRICITY.** In death action, instruction held to cover question of decedent's duty to exercise care.

In an action against an electric company for death by electrocution, instructions *held* to sufficiently cover question of decedent's duty to exercise care. (*Post, pp.* 527, 528.)

4. **TRIAL.** Instruction on effect of an ordinance held error, there being no evidence that electrocution occurred within city.

In an action for death by electrocution, though an ordinance requiring the insulation of electric wires was offered in evidence without objection, an instruction on the effect of this ordinance was error, there being no evidence that the place where decedent was electrocuted was within the corporate limits of the city. (*Post, pp.* 528, 529.)

5. **EVIDENCE.** Judicial notice taken that designated city is incorporated.

A court can take judicial notice of the fact that a designated city is incorporated. (*Post, pp.* 529, 530.)

6. **EVIDENCE.** Judicial notice not taken of location of city streets and boundaries.

A court cannot take judicial notice of the location of streets and boundaries of a city. (*Post, pp.* 529, 530.)

Cases cited and approved: Alexander v. Railway Co. 139 Tenn., 52; Vonkey v. City of St. Louis, 219 Mo., 42; Breckenridge v. Insurance Co., 87 Mo., 68; Anderson v. Commonwealth, 100 Va., 860.

FROM BRISTOL.

Appeal from Circuit Court of Sullivan County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—HON. D. A. VINES, Judge.

ST. JOHN & GORE and MAYNARD & LEE, for appellants.

ROBERT BURROW and J. D. BAUMGARDNER, for appellees.

MR. JUSTICE HALL delivered the opinion of the Court.

An action of damages instituted jointly in the law court at Bristol, by Lula B. Weaver, administratrix of Edward E. Goodwin, deceased, against Bristol Telephone Company and Bristol Gas & Electric Company (both private corporations), to recover for the alleged negligent killing of plaintiff's intestate, Edward E. Goodwin, on February 7, 1920.

Plaintiff's intestate, at the time he was killed, was in the employ of the Bristol Telephone Company as one of its linemen, and had been so engaged for some four or five months previous to his death. The accident which caused his death, occurred on Holston avenue, in the city of Bristol, Tennessee, on February 7, 1920; but whether it occurred inside or outside of the corporate limits of said city does not appear. The evidence shows that he and another employee of the telephone company were engaged in installing a telephone in the residence of a Mr. Sparger on the west side of Holston avenue. It appears from the

146 Tenn.—33

evidence that on Holston avenue the wires of the Telephone Company were strung on poles along the east side of said avenue, and that the wires of the Bristol Gas & Electric Company, which was engaged in furnishing electric current to the city of Bristol and its inhabitants, were strung on poles along the west side of said avenue; that the wires of the Bristol Gas & Electric Company were at all times, day and night, charged with deadly currents of electricity. Plaintiff's intestate had ascended one of the poles of the Telephone Company for the purpose of connecting a telephone wire to its line, one end of which had only a few moments before been connected to the house of Mr. Sparger on the opposite side of the street and pulled across the street under or beneath the high-powered wires of the Gas & Electric Company, which carried twenty-three hundred volts of electricity.

Previous to the installation of this telephone in Mr. Sparger's residence there had been a telephone in his residence, but the same had been removed some time prior to the date of the accident in question by the Telephone Company. In removing this telephone from the Sparger residence the Telephone Company had left the old steel wire, which connected said telephone with its line on the opposite side of said avenue, in position—that is, with one end attached to the Sparger residence and the other end attached to an insulator on the third cross-arm of the pole which plaintiff's intestate had ascended for the purpose of attaching the new wire—it appearing that the old wire was rusty and unfit for use. Plaintiff's intestate had carried the unattached end of the new wire in one hand up the pole with him to the first cross-arm, and put one of his feet or legs over the second cross-arm, and was

standing with his other foot resting on the first cross-arm. The old, abandoned wire then stood suspended a foot or two above the high-powered wires of the Gas & Electric Company. Plaintiff's intestate, in order to support himself and keep from falling, caught hold of the glass insulator around which the old, abandoned wire was wrapped with one hand, and in his other hand he held the new wire which he intended to connect with the line of the Telephone Company. He then began to pull the slack out of the new wire, the other end of which had been attached to the Sparger residence, as before stated, when the pole suddenly moved and leaned towards the street, causing the old wire, which was suspended a foot or two above the high-powered wires of the Gas & Electric Company, as before stated, to sag and come in contact with one of the Gas & Electric Company's high-powered wires at a place where the insulation was off of it; whereupon the old telephone wire became instantly charged with a heavy current of electricity, which was transmitted to the body of plaintiff's intestate, and he was killed.

In the first count of plaintiff's declaration it is alleged that the death of plaintiff's intestate was caused by the negligence of the Telephone Company in permitting one of its old, unused, and dead wires to remain attached to its pole and to the Sparger residence in such a way as to come in contact with a defectively insulated electric wire of the Gas & Electric Company, and on account of which negligence plaintiff's intestate received the current of electricity which caused his death. This count of the declaration further alleged that the unsafe condition of the old, unused, and dead telephone wire was unknown to plaintiff's intestate, but was known, or could have been

known, to the Telephone Company if it had exercised reasonable and proper care.

In the second count plaintiff averred that her intestate's death was the result of the negligence and carelessness of the Gas & Electric Company in using and maintaining on one of the principal streets of the city of Bristol a high-powered wire from which the insulation had been removed or had fallen off, or was so defectively insulated as to offer no protection to plaintiff's intestate, who was in contact with the old, unused, and dead wire of the Telephone Company, which sagged and came in contact with said high-powered wire when the pole upon which plaintiff's intestate was sitting or standing moved or leaned towards the street; that the unsafe condition of this defectively insulated electric wire was unknown to plaintiff's intestate, but was known, or could have been known, to the Gas & Electric Company, if it had exercised reasonable and proper care.

The third count averred that the Gas & Electric Company was guilty of negligence in not having its electric wires well insulated in compliance with an ordinance of the city of Bristol, which was passed for the protection of human life, and which was then in force, and required that all wires strung, erected, or maintained by said company for the purpose of conducting electric current within the corporate limits of said city should be at all times well insulated.

The fourth count averred that the death of plaintiff's intestate was caused by the joint and concurrent negligence of both of said defendants in the manner and particulars set out in the first, second, and third counts of the declaration.

In the fifth count it was averred that both of the defendants were negligent in not warning plaintiff's intestate of the dangers incident to the situation described and set forth in the preceding counts of the declaration; all of said dangers being unknown to plaintiff's intestate, but were known, or could have been known, to defendants if they had exercised reasonable and proper care.

The defendant Telephone Company filed a plea in abatement to the plaintiff's suit, averring that it had regularly in its employ more than ten persons at the time of the accident which resulted in the death of plaintiff's intestate, and had fully and in all respects complied with chapter 123 of the acts of 1919, known as the Workmen's Compensation Act, and was operating under said act at the time plaintiff's intestate was killed; wherefore, it was entitled to have plaintiff's suit abated.

The plaintiff moved to strike the plea in abatement filed by the Telephone Company upon the ground that it presented an immaterial issue. This motion was overruled and said defendant's plea in abatement was finally sustained, and the suit was abated as to it.

The defendant Gas & Electric Company likewise filed a plea in abatement to the plaintiff's suit, averring that at the time plaintiff's intestate was killed he was an employee of the Telephone Company, and that both he and the Telephone Company had elected to operate and were operating under the Workmen's Compensation Act, and that plaintiff's intestate was killed while acting in the line of his employment; that said intestate's widow had agreed to accept, and intestate's employer had agreed to pay, the compensation provided by said act, and therefore the plain-

tiff's suit against the Gas & Electric Company could not be maintained.

This plea in abatement of the Gas & Electric Company was stricken upon motion of the plaintiff. Whereupon said defendant filed a demurrer to the plaintiff's declaration, which demurrer raised substantially the same question presented by said defendant's plea in abatement. Its demurrer was overruled by the court. Whereupon said defendant filed a plea of not guilty.

The case then proceeded to trial against the Gas & Electric Company alone before the court and a jury. At the conclusion of the plaintiff's evidence said defendant moved for a directed verdict in its favor. This motion was overruled, and was renewed at the conclusion of all the evidence, and was again overruled.

Upon the case being submitted to the jury, they returned a verdict in favor of the plaintiff and against the defendant Gas & Electric Company for $9,000. Its motion for a new trial was overruled, and, judgment being entered in accordance with the verdict of the jury, it appealed to the court of civil appeals. That court affirmed the judgment of the trial court, and the case is now before this court upon said defendant's petition for the writ of *certiorari* and for review. By its first assignment of error defendant insists that the trial court erred in striking its plea in abatement filed to the plaintiff's action.

By its second assignment of error defendant insists that the trial court erred in overruling its demurrer to the plaintiff's declaration.

As for both the plea in abatement and demurrer go to the same question, they will be discussed together. It appears that both plaintiff's intestate and the Telephone

Company had, prior to this accident, elected to become subject to the provisions of the Workmen's Compensation Act, and it is contended by defendant that, on account of this fact, it is not liable to an action at law; that plaintiff's right to compensation for the death of her intestate is controlled exclusively by the Workmen's Compensation Act. In other words, it is insisted by defendant that that act provides the remedy to plaintiff by which she may recover compensation for the death of her intestate, and that all other remedies are excluded.

To support this contention defendant relies on section 8 of said act, which reads as follows:

"That the rights and remedies herein granted to an employée subject to this act on account of personal injury or death by accident shall exclude all other rights and remedies of such employee, his personal representative, dependents or next of kin, at common law or otherwise, on account of such injury or death."

Defendant insists that the only exception made is that contained in section 14 of said act, which reads as follows:

"That whenever an injury for which compensation is payable under this act shall have been sustained under circumstances creating in some other person than the employer a legal liability to pay damages in respect thereof, the injured employee may at his option either claim compensation or proceed at law against such other person to recover damages, or proceed against both the employer and such other person, but he shall not be entitled to collect from both; and if compensation is awarded under this act the employer having paid the compensation or having become liable therefor, may collect, in his own name or in

the name of the injured employee in a suit brought for the purpose, from the other person in whom legal liability for damages exists, the indemnity paid or payable to the injured employee."

It is insisted by defendant that the undisputed evidence shows that the death of plaintiff's intestate was not caused or produced under circumstances creating in some other person than the employer a legal liability to pay damages in respect thereto, because it is alleged in the plaintiff's declaration that the death of her intestate was produced or caused by the joint and concurrent negligence of both the defendant and the Telephone Company; that section 14 of the Workmen's Compensation Act only gives the injured employee the right to proceed against another person where the negligence of such person is the exclusive and sole cause of the injury.

This contention cannot be sustained. The purpose and effect of our Workmen's Compensation Act is to control and regulate the relations between an employer and his employees. As between them the remedies there provided are exclusive when both are under the act at the time of the accident. The act does not attempt in any way to abridge the remedies which any employee of one person may have at law against a third person for a tort which such third person commits against him.

In Corpus Juris, Treatise on Workmen's Compensation Acts, p. 139, section 167, the general rule is stated to be that a provision that the liability prescribed by the Compensation Act shall be exclusive is construed to apply only to actions against the employer, and does not prevent an injured employee from maintaining a common-law action as against third persons causing the injury; but that

a statute declaring that "all phases of the premises are withdrawn from private controversy" and that relief is provided "to the exclusion of every other remedy, proceeding or compensation" abrogates any right of action as against third persons, except as within a proviso saving such rights of action where the injury occurs away from the plant of the employer.

To the same effect is the rule stated in *Smale* v. *Wrought Washer Mfg. Co.*, 160 Wis., 331, 151 N. W., 803; *Lester* v. *Otis El. Co.*, 90 Misc. Rep., 649, 153 N. Y. Supp., 1058; *Hall* v. *Thayer & Co.*, 225 Mass., 151, 113 N. E., 644.

Section 14 of said act gives certain rights to employer and employee. It provides that, whenever an injury for which compensation is payable under said act shall have been sustained under circumstances creating in a person other than the employer a legal liability to pay damages for such injury, the injured employee may, at his option, either claim compensation from his employer, or proceed at law against such other person to recover damages, or proceed against both the employer and such other person— that is, against his employer under the Workmen's Compensation Act, and against such other person in a common-law action—but he shall not be entitled to collect from both. If, however, compensation is awarded him under the Workmen's Compensation Act against his employer, his employer, upon paying the compensation, or becoming liable therefor, may collect in his own name or in the name of the injured employee in a suit brought for the purpose, from the other person in whom the legal liability for damages exists, the indemnity paid or payable to the injured employee.

It will readily be seen that the provisions of this section of the Workmen's Compensation Act are strictly for the benefit of the employer and employee. It in no way protects a third person from suit whose negligence may have contributed to the injury or death of the employee. There is nothing in said section which abridges or limits the employee's common-law right of action against such third person. The fact that the Telephone Company's negligence may have concurred with that of defendant in causing the injury can make no difference in so far as the right of the employee to proceed against the defendant is concerned.

In *Swain* v. *Tennessee Copper Co.*, 111 Tenn., 430, 78 S. W., 93, it was expressly held that, when a tort is committed by two or more persons jointly, by force directly applied, or in the pursuit of a common purpose or design, or by concert, or in the advance of a common interest, or as the result and effect of joint concurrent negligence, all of such persons are joint tort-feasors, and are jointly and severally liable for all the damages done the injured party, and that these damages may be recovered in joint or several actions, although the wrongful conduct or negligence of some may have contributed less than that of others to the injury done.

To the same effect is the rule stated in 2 Thompson on Negligence, 1088, and *Electric Railway Co. et al.* v. *Shelton,* 89 Tenn., 423, 14 S. W., 863, 24 Am. St. Rep., 614.

Defendant relies on the case of *Peet* v. *Mills,* 76 Wash., 437, 136 Pac., 685, L. R. A., 1916A, 358, Ann. Cas., 1915D, 154. There the court had under consideration the Workmen's Compensation Act of the State of Washington. Section 1 of that act (Laws 1911, p. 345) provides as follows:

"The common-law system governing the remedy of workmen against employers for injuries received in hazardous work is inconsistent with modern industrial conditions. In practice it proves to be economically unwise and unfair. Its administration has produced the result that little of the cost of the employer has reached the workman, and that little only at large expense to the public. The remedy of the workman has been uncertain, slow and inadequate. Injuries in such works, formerly occasional, have become frequent and inevitable. The welfare of the State depends upon its industries, and even more upon the welfare of its wage worker. The State of Washington, therefore, exercising herein its police and sovereign power, declares that all phases of the premises are withdrawn from private controversy, and sure and certain relief for workmen, injured in extrahazardous work, and their families and dependents, is hereby provided regardless of questions of fault and to the exclusion of every other remedy, proceeding or compensation, except as otherwise provided in this act; and to that end all civil actions and civil causes of actions for such personal injuries and all jurisdiction of the courts of the State over such causes are hereby abolished, except as in this act provided."

It will be noted that the remedy given by the Washington act is provided regardless of questions of fault, and to the exclusion of every other remedy, and to that end all civil actions and civil causes of actions for such personal injuries and all jurisdiction of the courts of the State over such cases are abolished, except as in the act provided. Therefore the supreme court of Washington, in construing said act, very properly held that the remedy therein given was exclusive of all other remedies. The Washington act

is entirely different from our act, and the holding of the court in Peet v. Mills, supra, in no way controls the question under consideration in the suit at bar. The Washington act provides the remedy which the employee has for injury done him regardless of question of fault, and to the exclusion of every other remedy, proceeding, or compensation, and all civil actions and civil causes of actions for such personal injuries are abolished, except as therein provided.

Our act nowhere undertakes to deny or abridge the employee's common-law right of action against a third person whose negligence may be the sole or a contributing cause of his injury. There is therefore no reason why plaintiff cannot maintain her suit against defendant, and defendant's first and second assignments of error are therefore overruled.

By its third and fourth assignments of error it is insisted that there is no evidence to support the verdict of the jury, and that the trial judge erred in not directing a verdict in its favor at the conclusion of all the evidence.

These assignments are not well grounded. There was evidence offered by the plaintiff which tends to show that appellant was guilty of negligence in the manner in which it maintained its wires which carried a deadly current of electricity, in that it had suffered the insulation on said wires to become defective, by reason of which they were rendered dangerous; in fact, it is not contended that appellant was not guilty of negligence in this regard. The fact that the insulation was off of its wire at the point where the wire of the Telephone Company came in contact with it is not disputed, and by reason of which a heavy current of electricity was communicated to the

telephone wire, and through it to the body of plaintiff's intestate, causing his death. No evidence was introduced by the appellant which tended to show that it did not know of the defective condition of its wires, or that it could not have known of such condition by the exercise of ordinary care.

In *Nashville Interurban Railway Co. v. Gregory,* 137 Tenn., 430, 193 S. W., 1053, it was expressly held by this court that it is negligence on the part of a person or corporation maintaining wires charged with a dangerous current of electricity over the public highway and underneath or above other wires known to be defective and insecure, and that it was also negligence for such a company to rest unmindful of the state of its overhead wires. It must exercise a high degree of care to see that its wires are kept in good repair.

No evidence was offered by appellant that it had inspected its wires, or had used any precautions whatever to maintain them in a safe condition. Its principal contention is that the defective condition of its wires and the danger incident thereto were obvious and patent, and were either known to plaintiff's intestate, or could have been known to him if he had exercised ordinary care, and that therefore he assumed the risk incident to such condition and danger.

In support of this contention appellant relies on *Street Railroad & Telephone Cos. v. Simmons,* 107 Tenn., 392, 64 S. W., 705, and *Consolidated Gas & Elec. Co. v. Simpson* (Tenn.), 109 S. W., 1155.

In the first case above referred to the deceased, Simmons, was a lineman in the employ of the Telephone Company. It was a part of his duties, as such lineman, to inspect wires

about which he worked or with which he came in contact, for the purpose of ascertaining the presence of an electric current in them, and had been furnished by the Telephone Company with a testing device for that purpose. It appears that the Street Railroad Company and the Telephone Company used a common pole on which to string their wires, and Simmons' duties brought him in close contact with the wires of the Street Railroad Company, which carried a deadly current of electricity. It further appeared that Simmons had knowledge of the danger which caused his death, and had been warned not to ascend the pole on which he was working at the time he was killed.

In the case of *Consolidated Gas & Electric Co.* v. *Simpson,* supra, the evidence showed that the danger with which Simpson came in contact, and which caused his death, was so open, obvious and patent that it could have been discovered by a casual observation on his part, and could have been avoided by him.

In the instant case it does not appear that plaintiff's intestate knew of the defective and dangerous condition of the wires of appellant, or that he could have known of such condition by the exercise of ordinary care. It does not appear that their condition was open and obvious to plaintiff's intestate. The undisputed evidence shows that said wires were located on the opposite side of the street from where deceased was at work. He had nothing to do with appellant's wires. His work did not require him to come in contact with them, and he did not expect to do so. They were strung on independent and distinct poles, and, while it appears that deceased, standing in the street, could have seen the wires of appellant, it does not appear

that their defective condition could have been discovered by him.

We do not think that it was the duty of plaintiff's intestate, who was engaged in his work at a point remote from the wires of appellant, and did not intend to come in contact with them, to make an inspection of its wires. He had no reason to expect injury from appellant's wires, which were located on the opposite side of the street. Nor does it appear that he had any reason to expect that the wire of the Telephone Company would sag and come in contact with appellant's wires at the time he ascended the pole on which he was working at the time he was killed. We do not, therefore, think he assumed the risk incident to the danger growing out of the defective condition of appellant's wires, nor do we think he was guilty of negligence in not inspecting them.

It appears that the court charged the jury upon request of appellant as follows:

"I charge you, as requested by the defendant, that if you find from the proof that the deceased failed to exercise due, that is active, diligence for his own safety, and that such failure on his part concurred proximately with the negligence of the defendant Bristol Gas & Electric Company in producing the injury to the deceased, then I charge you that the plaintiff cannot recover."

"If you find further from the proof that the deceased was an experienced lineman, familiar with an uninsulated or defectively insulated electric light wire, and that the light wires involved in this case were in that condition, which condition he either saw or knew, or by the exercise of due and active diligence for his own safety could have seen and known, then it was the duty of the deceased to

avoid coming in contact with said electric wire, either directly with his person or indirectly through the old telephone wire, and, if he failed in this duty to himself, and if, under these circumstances, he permitted or brought any part of his person in touch with said electric light wires, and in that way received the fatal shock, or if he so did the work in which he was engaged that he brought the old telephone wire in contact with the electric wire, and in such way received the shock which killed him, plaintiff cannot recover, and your verdict should be for the defendant."

We think the foregoing instruction sufficiently covered the legal duty which rested upon plaintiff's intestate for his own personal safety.

It is next insisted that the trial judge erred in refusing to charge certain special requests offered by appellant relating to the degree of care which plaintiff's intestate should have exercised for his own safety on the occasion of the accident.

We think that the instructions above quoted, and which were given upon the request of appellant, sufficiently covered the law in respect of the degree of care which plaintiff's intestate was required to exercise for his own safety under the facts proven.

It is next insisted that the trial court erred in charging the jury as follows:

"And, if you find that the plaintiff's intestate was killed within the corporate limits of the city of Bristol, Tenn., and shall further find that said city had an ordinance at that time requiring electric light companies to have their electric wires well insulated, then I instruct you that failure to comply with said ordinance in keeping the electric

Bristol Telephone Co. v. Weaver.

wires well insulated was negligence *per se*—that is the act of failing to have and keep the electric wires well insulated was in itself an act of negligence—and, if such negligence was the proximate cause of the accident by which plaintiff's intestate lost his life, then the plaintiff is entitled to recover, and your verdict should be for the plaintiff."

It is said that to give this instruction was error because there was no evidence which tended to show that the accident occurred within the corporate limits of the city of Bristol. The plaintiff introduced in evidence an ordinance of the city of Bristol, and its introduction was unexcepted to, which required electric companies to keep their electric light wires well insulated. This was the ordinance which is referred to in the court's instruction above. There was no evidence offered which tended to show that said ordinance was in any way applicable to this case. No evidence was offered which tended to show that the place where plaintiff's intestate was killed was within the corporate limits of the city of Bristol. All the evidence showed was that the accident occurred on Holston avenue. It does not appear at what point on Holston avenue the accident occurred, except that it occurred opposite the residence of Mr. Sparger. There is no evidence which tends to show that this portion of Holston avenue is within the corporate limits of the city of Bristol. It was, therefore, manifest error for the trial judge to give said ordinance in charge to the jury. We cannot know but what the jury predicated its verdict upon a violation by appellant of this ordinance. While this court can take judicial notice of the fact that the city of Bristol is an incorporated city, it cannot take judicial notice of the location of its streets, and whether or not a

146 Tenn.—34

particular street, and more especially a particular point on said street, is within the corporate limits of said city. In other words, this court cannot take judicial notice of the location of the boundaries of said city. *Alexander* v. *Railway Co.,* 139 Tenn., 52, 201 S. W., 134; *Vonkey* v. *City of St. Louis,* 219 Mo., 42, 117 S. W., 733; *Breckenridge* v. *Insurance Co.,* 87 Mo., 68; *Anderson* v. *Commonwealth,* 100 Va., 860, 42 S. E., 865.

The fact that there was no objection by appellant to the introduction of the ordinance in evidence cannot alter the situation. The fact remains that there was no evidence offered which made said ordinance applicable, and it was prejudicial for the trial judge to give it in charge to the jury, and for this error the judgment will be reversed and the case remanded for a new trial.

Appellee will be taxed with the costs of the appeal to this court.