# JAMES W. BILLINGS v. A. A. DUGGER—362 S. W. (2d) 49.

Middle Section.  March 2, 1962.

Certiorari Denied by Supreme Court November 9, 1962.

James H. Bateman, R. B. Parker, Jr., Nashville, for plaintiff in error.

Elmer D. Davies, Jr., Nashville, for defendant in error.

## I

SHRIVER, J. James W. Billings sued A. A. Dugger for $50,000 damages for personal injuries sustained when he, the plaintiff, stepped upon a platform, or porch, which collapsed causing him to fall approximately 8 feet into the basement of a house which was being constructed by the defendant.

Plaintiff's declaration charges that the defendant was guilty of common law negligence in maintaining this dangerous condition and in failing to provide warnings or barricades to prevent persons from using said porch floor.

The plea of the defendant was that he was not guilty of negligence and that, at the time in question, he was operating under the provisions of the Tennessee Workmen's Compensation Act and that plaintiff was an employee of a sub-contractor, hence, plaintiff's rights, if any, were governed exclusively by the terms of said Workmen's Compensation Act.

The case was tried before the Honorable Byrd Douglas, Judge of the Second Circuit Court, of Davidson County, Tennessee and a jury, in August 1961 and resulted in the Court's sustaining a motion for a directed verdict in favor of the defendant. A motion for a new

trial was seasonably filed and overruled and an appeal granted to this Court and assignments filed.

## II

As counsel for the appellant state in their brief, the sole question presented by this appeal is whether or not under the facts the defendant is immune, as a matter of law, to action at common law for negligence because of Section 15, of the Workmen's Compensation Act, T. C. A. sec. 50-915. If defendant is a principal contractor within the meaning of this section then he is immune, otherwise he is not.

It is the contention of plaintiff that the record does not support a finding that he is such contractor as a matter of law.

Counsel for defendant states the question this way: "The determinative question in this case is whether the Workmen's Compensation Act covers the relationship between the plaintiff and the defendant in this case, thus precluding an action at common law."

## III

### The Facts

Counsel for appellant summarize the testimony of plaintiff and several witnesses substantially as follows:

The plaintiff testified that on July 9, 1959, he was injured on defendant's property, specifically Lot No. 16 in Orchard Hills Subdivision, and that he was on that date employed by Warren Brothers Company, a firm of furnishers of glass and woodwork to builders; that he and his supervisor, Mr. Grady Osborne, had gone upon defendant's property to deliver and install a mirror in

defendant's house; that the steps and the front stoop were unfinished but that forms had been erected for the pouring of concrete; that there were no warnings or barricades to indicate that the porch was in an unsafe condition but that the platform on the top of the porch appeared to be solid and substantial; that Mr. Osborne walked across the platform and entered the house; and that when the plaintiff stepped upon the platform it collapsed and he fell approximately eight (8) feet to the basement floor, then and there sustaining the injuries complained of.

Upon cross-examination, the plaintiff testified that he had previously delivered mirrors, sash, and other materials to several houses, including the house where he was injured, all of which were being constructed by the defendant in the same subdivision. He further was allowed to testify over the objections of counsel, that Warren Brothers Company was covered by the Workmen's Compensation Act, and that he had drawn benefits under the employer's coverage for the injuries complained of.

Mr. Grady Osborne testified that he was the plaintiff's supervisor, that he had accompanied plaintiff to the house for the purpose of installing the mirror and generally corroborated plaintiff's testimony.

On cross-examination, Mr. Osborne testified that he had delivered a good many items to the defendant in the houses in this particular subdivision, including doors, window frames, inside woodwork, and other materials. Over plaintiff's objection, he was allowed to state that he knew Mr. Dugger the defendant, to be a general contractor.

Howard D. Farmer, Jr., testified that he had purchased from the defendant, A. A. Dugger, the house and lot described as Lot No. 16 in the Orchard Hills Subdivision on September 8, 1959; that he first met Mr. Dugger to arrange the purchase of the house four or five days prior to September 8, 1959; and that he had no contract of any kind with the defendant at the time the house was being built.

On cross-examination, Loyd Hunter stated that he had been defendant's foreman approximately three years prior to the date of the accident; that the defendant had been in the business of building homes for sale; and that he had participated in building about fourteen (14) houses in Orchard Hills Subdivision.

He further testified that Warren Brothers Company were furnishing all the window frames, door frames, etc., for the houses in Orchard Hills Subdivision; that in building houses for sale the defendant would make contracts with such workmen as concrete finishers, electricians, painters, etc., and that those individuals would have their own employees do the work.

James Linebaugh testified that he was an attorney employed by the American Insurance Company, which company carried the Workmen's Compensation insurance for the Warren Brothers Company, and that the company had paid certain benefits to and on behalf of the plaintiff on account of the accident herein complained of. He stated that the American Insurance Company expected to be reimbursed for these payments in the event of a recovery by the plaintiff.

Defendant, A. A. Dugger, testified that his occupation was that of ''Builder'' which occupation he had followed

for about eight years on his own behalf and that prior to that time he was a carpenter. He stated that his plan of operation was to build and sell houses to purchasers using F.H.A. and G.I. loans. It was his practice to let out by contract the concrete work, block work, brick work, plumbing, roofing, etc., but he did the wood work himself with the aid of men he hired.

He testified that he was qualified and carried insurance under the Workmen's Compensation Act of Tennessee which fact was corroborated by the testimony of Mrs. Mildred Johnson, Assistant Director of the Workmen's Compensation Division of the State.

He testified that the house where the injury occurred was under construction at the time of the accident. This house was in the Orchard Hills Subdivision located near Bordeaux in Davidson County and that the subdivision was made and developed on land which the defendant Dugger had bought, and that he built some twenty-one houses for sale in this subdivision, including the house on lot 16, which is the one in question here. He stated that he and his employees were doing the carpenter work on this house and that other parts of the work were let out to subcontractors, which included the construction of the porch where the accident happened.

He testified that he bought materials from Warren Brothers for the Orchard Hills houses including windows, doors, trim, molding, and mirrors. The plaintiff was delivering a mirror for installation in the house on lot No. 16 as an employee of Warren Brothers when the accident happened.

The lot on which the house was being built was in the name of A. A. Dugger and his wife as tenants by the en-

tireties, but the house was being built for sale and was sold shortly after it was completed. In the course of his business it was his practice to build houses and sell them at any stage of construction. The house on Lot No. 15, next door to the house in question, was being built by defendant under a contract with the purchaser at the time plaintiff was injured.

## IV

Under these facts, what is the applicable rule?

In Maxwell v. Beck, 169 Tenn. 315, 87 S. W. (2d) 564, our Supreme Court held that the Workmen's Compensation Act must be liberally construed to accomplish the ends intended, and words used therein cannot be given a restricted or literal meaning. It was said by the Court that the Workmen's Compensation Act is remedial, intended to burden industry with the responsibility of industrial accidents by requiring compensation to injured employees, and is to be applied fairly and broadly to accomplish the ends intended.

In referring to Section 15 of the Act, which is under consideration in the case at bar, the Court said;

"The clear intent and purpose of the Legislature in the enactment of the above section was to insure, as far as possible, to all workmen, so engaged, payment according to the schedule of benefits provided elsewhere in the act, when injured in the course of their employment."

In McVeigh et al. v. Brewer, 182 Tenn. 683, 189 S. W. (2d) 812, it was earnestly urged that a furnisher of materials was not a contractor within the meaning of the statute. However, the Court held to the contrary, saying

that the driver of one of the trucks of a furnisher of materials along with the corporate owner of the trucks were subcontractors within the provision of the Workmen's Compensation Act which provided that principal or intermediate contractors or subcontractors should be liable for compensation of his subcontractor's injured employees to the same extent as immediate employers.

In Brady et ux. v. Reed, 186 Tenn. 556, 212 S. W. (2d) 378, the Court held that employers were in the "building business" for the purpose of applying the Compensation Act though the house in connection with which a carpenter was injured, and which was the first one of a number constructed by the defendant, was being built for use by the employer as his own home.

The Court further said (pages 560-561, 212 S. W. (2d) page 380) that it was not material that one house, the first one constructed, was to be the home of the employers (man and wife) and that the others were to be sold. The defendants contended that all the evidence as to the business they carried on subsequent to the construction of the house on McIntyre Avenue was inadmissible, and that it was error to consider it. But the Court stated that it was competent as showing the nature and general course of the business of the employers. And the Court pointed out further that, while it was the original intention of the employers to build a home, nevertheless, in acquiring material for that purpose, they were compelled to purchase certain old houses and, having a surplus of material, they, thereupon, decided to erect other houses for sale, and, "They thus were engaged in contracting and building houses." Clendening v. London Assurance Company, 206 Tenn. 601, 336 S. W. (2d) 535, 337 S. W. (2d)

603, and (on petition to rehear) 206 Tenn. 613, 337 S. W. (2d) 603, is a case dealing with a similar question.

In opinions written by Mr. Justice Sam Felts, the Court held, among other things, that, under the Statute providing that a principal contractor shall be liable for compensation to any employee injured while in the employ of any of his subcontractors engaged upon the subject matter of the contract to the same extent as the immediate employer, the principal contractor is liable for compensation for an injury occuring to an employee of his subcontractor even though the subcontractor is an independent contractor.

The Court further held that, although the builder of the house where the accident occurred owned the lot on which the house was being built, where he was building a number of houses for others, including the one in which the accident occurred, and he was in control of the project when the injury occurred, that the builder was the principal contractor within the meaning of the statute and the injured bricklayer was entitled to look to him or his insurer for compensation.

In the course of the opinion the Court stated;

"It is insisted for defendant, however, and the Trial Judge seems to have held, that Trammel, by taking the title to this lot in the name of himself and wife became the owner and was building the house as 'owner,' and not as 'principal or intermediate contractor or subcontractor,' within section 15; and that, therefore, neither he nor his insurer was liable under the Workmen's Compensation Act.

\* \* \* \* \* \*

"To construe this section so as to exempt a contractor in such circumstances would enable principal contractors to evade the Act and defeat its purpose, simply by taking title in themselves pending performance of their contracts."

The Court also quoted with approval from Brady v. Reed, supra, and went on to say that it is the duty of the Court to construe the Workmen's Compensation Act liberally in favor of those entitled to its benefits and that merely by taking title to a lot on which a house was being built, during the performance of the construction work, the building contractor may not avoid the Workmen's Compensation Act provision which would make builders liable as principal contractors for Workmen's Compensation to a subcontractor's employee.

Under the above authorities and for reasons which seem obvious we hold that defendant Dugger was engaged in the building business and that the mere fact that the title to the lot on which the house in question was being built was in Dugger and wife, did not alter the fact that he was subject to the provisions of the Tennessee Workmen's Compensation Act and that the plaintiff's remedy was, therefore, under the Compensation Act and not in an action at common law.

It results that the assignments of error are overruled and the judgment of the trial Court is affirmed.

Affirmed.

Humphreys, J., and Crownover, Special Judge, concur.