Milford Wendell POSEY, Jr., et
al., Plaintiffs,

v.

UNION CARBIDE CORPORATION
et al., Defendants.

No. 78–1035.

United States District Court,
M. D. Tennessee,
Columbia Division.

April 10, 1981.

Lloyd W. Gathings, Birmingham, Ala.,
for plaintiffs.

Hugh T. Shelton, Jr., James T. DuBois, Columbia, Tenn. (both for defendant Union Carbide Corporation).

## MEMORANDUM

WISEMAN, District Judge.

This is an action for damages for the death of plaintiff's decedent against, among others, Union Carbide, the owner of the premises where plaintiff's decedent was working when he died. Union Carbide has moved for summary judgment on three grounds: (1) tort recovery against Union Carbide is barred by Tenn.Code Ann. § 50–915 because Union Carbide was the principal contractor for the project; (2) Union Carbide did not fail to provide a safe work place; and (3) Union Carbide did not have a duty to see that adequate safety precautions were taken. Because the Court agrees with Union Carbide's section 50–915 argument, the discussion will be limited to that issue.

### Discussion

Defendant urges that it was the principal contractor for the job on which plaintiff's decedent was working, and thus tort recovery against it is barred. Plaintiff says recovery against Union Carbide is not barred because Maury Steel, employer of plaintiff's decedent, paid the worker's compensation benefits, not Union Carbide. Clearly, however, if Union Carbide is considered a principal contractor for section 50–915 purposes, recovery against Union Carbide is barred regardless of who paid worker's compensation benefits.

The traditional construction setting includes three types of parties: (1) the owner, (2) the principal or general contractor, and (3) subcontractors. In the instant case, Union Carbide hired some nine firms to participate in the construction of a new graphite furnace plant. Union Carbide claims that it hired no principal or general contractor, rather Union Carbide claims that it served as the principal or general contractor for the project. Four Union Carbide employees served as project engineers on the contracts with the subcontractors. Maury Steel was what would normally be called a subcontractor, and its job was to erect the steel structure of the plant building and install the siding and roof. Union Carbide argues that it wore two hats—one as owner and one as principal contractor.

Plaintiff's decedent died as a result of injuries incurred when he fell through the roof of Union Carbide's new graphite furnace plant. Although Union Carbide argues that it had supervisory control over the project as a whole, it concedes that it did not undertake direct supervisory control of the work performed by plaintiff's decedent. For purposes of this motion the Court assumes that Union Carbide was owner, undertook to hire Maury Steel and the other contractors, and had general control over the project.[1] Because plaintiff's decedent has recovered worker's compensation from Maury Steel's insurer, a grant of summary judgment for Union Carbide would preclude any recovery against Union Carbide.

Worker's compensation laws were enacted to compensate employees for loss of earning capacity sustained in the course of their employment. *W. S. Dickey Mfg. Co. v. Moore*, 208 Tenn. 576, 347 S.W.2d 493 (1961); *Mathis v. J. L. Forrest & Sons*, 188 Tenn. 128, 216 S.W.2d 967 (1949). To recover compensation, the employee need not prove negligence, and he is not subject to the defenses of assumption of risk, the fellow servant rule, and contributory negligence. Tenn.Code Ann. § 50–911. Although the employer is required to compensate employees for injuries that may not be the result of the employer's negligence, he is protected from damage verdicts for tortious injury. *Id.* § 50–908.

1. Although plaintiff summarily asserts that, "At best, defendant has created a question of fact regarding the 'principal contractor' issue," none of the facts that concern Union Carbide's status as a principal contractor are disputed in plaintiff's brief. The issue is, therefore, wholly legal in nature and ideal for resolution on motion for summary judgment.

■ Tort recovery is permitted against third parties. The policy for allowing third-party actions is fairly simple: since the third party could not have been liable for worker's compensation, he should be prepared to make the injured person whole under normal tort principles. Injured persons should not be deprived of access to the courts for redress without reason. Employers under worker's compensation acts stand ready to pay worker's compensation. An employee who recovers worker's compensation may not generally pursue a tort remedy against his employer because that protection is the quid pro quo received by the employer for providing worker's compensation coverage.

■ Tennessee Code Annotated section 50–915 extends the duties and immunities of an employer to entities other than an employee's immediate employer.

> A principal, or intermediate contractor, or subcontractor shall be liable for compensation to any employee injured while in the employ of any of his subcontractors and engaged upon the subject matter of the contract to the same extent as the immediate employer.
>
> . . . .
>
> This section shall apply only in cases where the injury occurred on, in, or about the premises on which the principal contractor has undertaken to execute work or which are otherwise under his control or management.

When taken together with Tenn.Code Ann. § 50–908, which provides for worker's compensation as the exclusive remedy, tort recovery is barred against a principal contractor.

■ Section 50–915 creates "statutory employers" that will be liable for worker's compensation in case recovery is unavailable against the employee's immediate employer. Similar "statutory employer" statutes are on the books in over forty states. See 2A A. Larsen, The Law of Workmen's Compensation § 72.31, at 14–57 (1980). The purpose of section 50–915 and similar statutes is to protect employees from irresponsible subcontractors. The principal or general contractor will be responsible for an injured employee's worker's compensation if it has failed to hire reliable, insured subcontractors. "The object of the statute is to give the general contractor an incentive to require subcontractors to carry insurance." Id.

■ In this diversity case the Court is bound by Tennessee law. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Under Tennessee law a firm that undertakes work for an entity other than itself may be a principal contractor for 50–915 purposes, Siskin v. Johnson, 151 Tenn. 93, 268 S.W. 630 (1925), regardless of whether it is the owner, Clendening v. London Assurance Co., 206 Tenn. 601, 336 S.W.2d 535, rehearing denied, 206 Tenn. 613, 337 S.W.2d 603 (1960); Billings v. Dugger, 50 Tenn.App. 383, 362 S.W.2d 49, cert. denied, id. (1962). Generally, an owner is not considered a principal contractor. Womble v. J. C. Penney Co., 431 F.2d 985 (6th Cir. 1970); Chappell v. Olin-Mathieson Chemical Corp., 305 F.Supp. 544 (E.D.Tenn. 1969). If the work is not undertaken for another, an owner may be a principal contractor if he undertakes direct supervisory control of the work of another contractor's employee. Carpenter v. Hooker Chemical & Plastics Corp., 553 S.W.2d 356 (Tenn.App. 1977). The precise issue before the Court is whether an owner who acts as the general contractor on his own project and does not immediately control the work of the subcontractors' employees is a principal contractor under section 50–915. Because the policy underlying the "statutory employer" section of the worker's compensation act is broad in granting availability of employers against whom the employee may seek worker's compensation, and because the most recent pronouncement of Tennessee law by a Tennessee court extends immunity to an entity in Union Carbide's position, the motion for summary judgment on behalf of Union Carbide is granted.

In Siskin v. Johnson, 151 Tenn. 93, 268 S.W. 630 (1925), the Tennessee Supreme Court held that defendants, who had hired plaintiff's employer to move certain cargo from railroad cars, were not principal con-

tractors within the scope of the worker's compensation law.[2]

> They [defendants] had not contracted or undertaken to execute work for another, but had only employed [plaintiff's employer] to perform certain work for them.

268 S.W. at 631. Because the work was not undertaken on defendants' premises and was not otherwise under their control, the court noted that the last paragraph of the statute also deprived defendants of principal contractor status.

In 1960 the Supreme Court of Tennessee held that an owner was a principal under 50–915 because he had undertaken the work for another. *Clendening v. London Assurance Co.*, 206 Tenn. 601, 336 S.W.2d 535, *rehearing denied*, 206 Tenn. 613, 337 S.W.2d 603 (1960). The plaintiff in *Clendening* was injured while working on a house owned by Trammel, who had hired Jones, plaintiff's employer, to do brick work. Trammel had contracted for a Mr. and Mrs. Peace to buy the house upon completion. Plaintiff sued Trammel's insurance company for worker's compensation. The insurance company argued that Trammel was not a principal contractor because he owned the house. The court disagreed. Looking through form to substance the court held that even though he had title to the property Trammel was a principal contractor because he had undertaken to build the house for the Peaces. 336 S.W.2d at 539; 337 S.W.2d at 604.

In *Womble v. J. C. Penney Co.*, 431 F.2d 985 (6th Cir. 1970), the Sixth Circuit held that an owner was not a principal contractor for section 50–915 purposes. In *Womble*, plaintiff was an employee of Robertson & Sons Painting Contractors and was working in a J. C. Penney store when he was injured. J. C. Penney had contracted with Robertson & Sons to paint the store. The court agreed that J. C. Penney "as owner of the property was not a principal contractor since that term did not ordinarily refer to the owners of the premises who have contracted with other firms to perform the work." *Id.* at 987. Robertson & Sons was held to be the principal contractor and, thus, plaintiff's tort action against J. C. Penney was not barred.[3]

Union Carbide relies most heavily on a Tennessee Court of Appeals decision in which an owner was held to be a principal contractor. *Carpenter v. Hooker Chemical & Plastics Corp.*, 553 S.W.2d 356 (Tenn.App. 1977).[4] In *Carpenter* plaintiff's decedent, an employee of Maury Steel, died as a result of injuries received while cutting a pipe under the direct order of an employee of Hooker, the owner and asserted principal contractor. The court held that Hooker was a principal contractor because "the employees of Maury Steel [employer of plaintiff's decedent] were used for an indefinite time to perform whatever details were assigned to them by Hooker, and employees of Hooker were engaged in the same reconstruction project." 553 S.W.2d at 358.

**2.** Section 50–915, section 15 of the original worker's compensation act, has remained virtually unchanged since its enactment in 1919.

**3.** In *Chappell v. Olin-Mathieson Chemical Corp.*, 305 F.Supp. 544 (E.D.Tenn.1969), Judge Wilson, while holding that the defendant owner was not a principal contractor under 50–915, gave a detailed analysis of the meaning of principal contractor.

> The term principal contractor is not defined in the statute. A note in the encyclopedia defines principal contractor as "a person standing in direct relation to the proprietor and responsible to him, permitted, by the nature of his contract, ordinarily, to work out the plan thereof by subletting to others as he sees fit." In the normal case, if a business wanted to build an additional building, it would contract out the entire job to a single contractor. That contractor may hire inde-

> pendent contractors to perform specialized functions in the building process. In this case the contractor hired by the owner or operator of the business is considered the principal contractor. The owner or operator of the business, however, may prefer to hire directly a number of independent contractors to perform the different functions, but by doing so he does not make himself a principal contractor. On the other hand, *one who normally performs the functions of a principal contractor will still be considered a principal contractor even though he takes legal title to the property.*

*Id.* at 545 (citations omitted and emphasis added).

**4.** Curiously, *Carpenter* was not appealed to the Tennessee Supreme Court.

The court continued, however, with dictum that supports Union Carbide's argument in this case.

> Where a business enterprise undertakes to act as its own general contractor and contracts directly with subcontractors for various phases of construction on its own premises, such business enterprise is subject to the liability imposed by the Workmen's Compensation Law upon general contractors and, consequently is entitled to the immunities conferred by the same law.

*Id.* Under this statement any owner who undertakes to act as its own general contractor will be immune from tort liability for injuries incurred by its subcontractor's employees.

Although the *Carpenter* decision is the most recent pronouncement of Tennessee law by a Tennessee court, this Court is not necessarily bound by its dicta if other conditions are convincing that the Tennessee Supreme Court would hold differently. *Commissioner v. Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886, 893 (1967). The Court believes that the Tennessee Supreme Court would not reject the court of appeals' dicta, however, because of the policies underlying the worker's compensation laws generally and section 50–915 specifically.

For the purposes of worker's compensation to be observed, the worker must be assured as much as possible of his worker's compensation remedy. As part of that assurance the employee is guaranteed recovery against the principal contractor as well as his immediate employer by section 50–915. When an owner undertakes to act as his own principal contractor he cannot repudiate the duties of 50–915. The owner becomes responsible for the reliability of his subcontractors because he, acting like a principal contractor, selected and hired the subcontractors. A principal contractor also normally undertakes the general supervision of the project. Through general supervision the owner, as principal contractor, can continue to ensure the reliability of the subcontractors.

The policy underlying section 50–915 is to guarantee worker's compensation recovery by passing the responsibility for coverage to principal contractors, who will not have to provide coverage unless they fail to hire responsible, insured subcontractors. The Tennessee Supreme Court decisions in *Siskin* and *Clendening* require that to be a principal contractor a firm must undertake work for another. Although Union Carbide did not undertake work for another in this case, the Court believes that the definition of principal contractor would be extended by the Tennessee Supreme Court to include Union Carbide to ensure that the policy underlying section 50–915 is fulfilled. The undertake-work-for-another rule would not be required by a Tennessee court in this case because to do so would ignore the policy of ensuring worker's compensation coverage.

This Court's decision that an owner who undertakes the duties of a principal contractor is a principal contractor within section 50–915 is at odds with the Sixth Circuit's ruling in *Womble v. J. C. Penney Co., supra*. The *Womble* court clearly relied on the undertaken-work-for-another rule of *Siskin* as its rule of decision. *See* 431 F.2d at 987. Because this Court believes that the Tennessee courts would not limit section 50–915 principal contractors to firms that have undertaken work for others, the rule applied in *Womble* is not binding. This Court is bound by state law and, therefore, is not bound by decisions of the Sixth Circuit in diversity cases when there has been an intervening decision of a state appellate court. *See* Corbin, *The Law of the Several States*, 50 Yale L.J. 462, 475–77 (1940).

The Tennessee Court of Appeals in *Carpenter v. Hooker Chemicals & Plastics Corp., supra*, indicates that the Tennessee courts are prepared to step away from the undertake-work-for-another rule and recognize a principal contractor by its duties and responsibilities rather its position as an intermediate entity between owners and subcontractors.

> An intermediate state court in declaring and applying the state law is acting as an

organ of the State, and its determination, in the absence of more convincing evidence of what the state law is, should be followed by a federal court in deciding a state question.

*Fidelity Union Trust Co. v. Field*, 311 U.S. 169, 177–78, 61 S.Ct. 176, 177–178, 85 L.Ed. 109, 113 (1940). Federal court decisions interpreting state law and related decisions of the state's highest court are some evidence of what state law is. This Court does not believe, however, that those decisions are convincing evidence that the Tennessee Supreme Court would ignore the policy behind section 50–915, which is vindicated in *Carpenter v. Hooker Chemicals & Plastics Corp., supra.* The *Carpenter* dicta is directly related to and supports the underlying policy of 50–915 that ensures the availability of worker's compensation coverage. The undertake-work-for-another rule is more definitional and, if made the only definitional prerequisite, would deny a worker compensation if an irresponsible owner, who undertook the duties of a principal contractor, hired uninsured contractors.

■ Thus, following the *Carpenter* dicta and the policy underlying section 50–915, the Court holds that Union Carbide was a principal contractor for purposes of section 50–915, and grants defendant's motion for summary judgment.