Ted FUGUNT, and wife, Bonnie Fugunt

v.

TENNESSEE VALLEY AUTHORITY

v.

JOHNS–MANVILLE SALES CORP.

No. CIV–1–81–94.

United States District Court,
E. D. Tennessee, S. D.

Aug. 17, 1982.

---

Sandra K. McCrea and Jerry H. Summers, Chattanooga, Tenn., for plaintiffs.

Herbert Sanger, Jr., Gen. Counsel, James E. Fox, Assoc. Gen. Counsel, Robert E. Washburn, Kenneth D. Mielke, TVA, Knoxville, Tenn., for defendant and third-party plaintiff.

U. L. McDonald, Chattanooga, Tenn., for third-party defendant.

## MEMORANDUM

FRANK W. WILSON, Chief Judge.

This is a personal injury action against the TVA in which the plaintiff, Ted Fugunt, alleges that he was injured in two separate accidents at TVA's Sequoyah Nuclear Plant. Fugunt was an employee of Johns-Manville Sales Corporation (JM), an independent contractor hired to do insulation work on turbines at the nuclear plant. The case is presently before the Court upon TVA's second motion for summary judgment.

The facts relevant to the disposition of this motion are not in dispute, the question being one of law and therefore suitable for decision upon a motion for summary judgment. Fed.R.Civ.P. 56. TVA entered into a contract with JM whereby JM would do insulating work on turbines at the Sequoyah Nuclear Plant. The plaintiff, a JM employee, was a carpenter whose job was to build scaffolds for the insulators. In the process of doing this work, the plaintiff was injured twice on property owned by TVA. The plaintiff was at all times under the direct supervision and control of JM. TVA was performing the overall construction of the project by what is known as "force account"; that is, "[w]ith its own forces, including a project manager responsible for the project's construction."

TVA's only supervisory responsibility over the plaintiff was to inspect the finished work. TVA also had the power to change construction plans. As a part of the contract, one of many between TVA and other contractors, JM was required to procure workers' compensation insurance, the premiums for which were paid by JM. The cost of this insurance was passed on to TVA as a part of the contract price. As a result of plaintiff's injuries, he has recovered, in some amount, benefits from JM in the form of workers' compensation.

TVA's position on this motion is that it was functioning as the principal contractor on this project, and it is therefore entitled to immunity from suit under the Tennessee workers' compensation law. The statutory basis for this argument is found in TCA §§ 50–908 & 915, which provide:

> 50–908. *Right to compensation exclusive.*
> —The rights and remedies herein granted to an employee subject to the Workmen's

Compensation Law on account of personal injury or death by accident ... shall exclude all other rights and remedies of such employee ..., at common law or otherwise, on account of such injury or death.

50–915. *Liability of principal, intermediate contractor or subcontractor for injuries to any employee—Remedies—Recovery.*—A principal, or intermediate contractor, or subcontractor shall be liable for compensation to any employee injured while in the employ of any of his subcontractors and engaged upon the subject matter of the contract to the same extent as the immediate employer.

This means that if TVA is deemed to be the principal contractor, then it is not liable to suit under common-law tort principles as a third party under TCA § 50–914. TVA is therefore immune in this case if it is found to be the principal contractor. *Hudnall v. S & W Construction Co. of Tennessee, Inc.*, 60 Tenn.App. 743, 451 S.W.2d 858 (1969); *Bristol Telephone Co. v. Weaver*, 146 Tenn. 511, 243 S.W. 299 (1921) (third party is subject to suit).

The Tennessee cases construing section 50–915's "principal contractor" provision are not dispositive of the issue before the Court in the present case, as the Tennessee courts have not passed upon this precise issue. Even so, Tennessee law must provide the rule of decision in this case. *Jackson v. Tennessee Valley Authority*, 413 F.Supp. 1050 (M.D.Tenn.1976).

A principal contractor is generally one who undertakes to perform work for another by contracting with one or more subcontractors who perform some specified portion of the total job. *See Womble v. J. C. Penney Co.*, 431 F.2d 985, 987 (6th Cir. 1970); *Chappell v. Olin-Mathieson Chemical Corp.*, 305 F.Supp. 544, 545–46 (E.D.Tenn. 1969); *Siskin v. Johnson*, 151 Tenn. 93, 97, 268 S.W. 630 (1925); *International Harvester Co. v. Sartain*, 32 Tenn.App. 425, 445, 222 S.W.2d 854 (1948). A principal contractor may do work on his own property if the work is being done for another, *Clendening v. London Assurance Co.*, 206 Tenn. 601, 336

S.W.2d 535 (1960), or if the owner assumes direct control over the employee. *Carpenter v. Hooker Chemical & Plastics Co.*, 553 S.W.2d 356 (Tenn.App.1977). But generally, the owner is not considered to be a principal contractor. *Womble v. J. C. Penney Co.*, 431 F.2d at 987.

TVA relies for support on *Posey v. Union Carbide Corp.*, 510 F.Supp. 1143 (M.D.Tenn. 1981) (applying Tennessee law). In *Posey* Union Carbide engaged several firms to build a manufacturing facility. No principal contractor, in the traditional sense, was used. Instead, Union Carbide functioned as a principal contractor, using four of its employees as project engineers. One of the firms with whom Union Carbide had contracted was Maury Steel. The plaintiff, an employee of Maury Steel, was fatally injured when he fell through the roof of the plant. *Id.* at 1144. Union Carbide was in almost precisely the same position in *Posey* as is TVA here. It had overall supervisory control, but no direct supervision was undertaken. The court articulated the issue before it in *Posey* as follows:

> [W]hether an owner who acts as the general contractor on his own project and does not immediately control the work of the subcontractors' employees is a principal contractor under section 50–915.

*Id.* at 1145. In holding that Union Carbide was a principal contractor, the court relied upon *Carpenter v. Hooker Chemical, supra*, and upon what it perceived to be the policy of the Tennessee workers' compensation act. The court acknowledged that its holding was contrary to the Sixth Circuit's construction of Tennessee law in *Womble*. However, Judge Wiseman reasoned that the intervening Tennessee Court of Appeals decision in *Carpenter* meant that *Womble* was no longer binding under the principles of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) and *Fidelity Union Trust Co. v. Field*, 311 U.S. 169, 61 S.Ct. 176, 85 L.Ed. 109 (1940). With this, the Court agrees. There are, however, two Tennessee decisions which have been rendered since *Womble*, and in the Court's opinion both of these cases must be con-

sidered before a prediction of the present state of the law in Tennessee can be made.

In *Hendrix v. Ray-Ser Dyeing Co.*, 224 Tenn. 690, 462 S.W.2d 483 (1970) the defendant, a textiles processor, contracted with one Scott to paint its smokestack. The only thing furnished by the defendant was the paint. Scott hired the plaintiff to do the work. The plaintiff was injured on the job, and because Scott did not carry workers' compensation insurance, the plaintiff brought an action for workers' compensation benefits against the defendant and its insurer, arguing that the defendant was a principal contractor under section 50–915. The Tennessee Supreme Court held that Ray-Ser was not a principal contractor. This holding was based on three grounds. First, the court stated that the defendant had not contracted to do work for another, 462 S.W.2d at 485; second, that "[d]efendant did not employ plaintiff, nor was he under defendant's control. He was under the control of Scott," *id.*; and third, that the plaintiff "was not engaged upon the subject matter of a general contract," as there was no general contract. *Id.*; TCA § 50–915; *see Williams v. Buchanan*, 149 Tenn. 639, 261 S.W. 660 (1923).

The present case is distinguishable on the facts from *Hendrix*. There, the defendant apparently was not engaged in a project involving numerous subcontractors, as is the case with TVA here. Ray-Ser hired a painter, through Scott, to do one job. Ray-Ser was not in the business of painting smokestacks, but on the other hand, TVA seems to have been in the business of building nuclear power plants. The situation in *Hendrix* is analogous to a homeowner's hiring someone to paint his house. In such a situation, it would be surprising had the Tennessee court held that the homeowner, or Ray-Ser, was liable for the painter's workers' compensation benefits.

In *Carpenter v. Hooker Chemical & Plastics Corp.*, 553 S.W.2d 356 (Tenn.App.1977) the plaintiff worked for Maury Steel (as in *Posey*), who had contracted with Hooker to do some work, which Hooker had to have done periodically. The plaintiff was injured while under the supervision and control of an employee of Hooker, the owner of the property. The court, relying on *Clower v. Memphis Light, Gas & Water Division*, 54 Tenn.App. 716, 394 S.W.2d 718 (1965), held that Hooker was the principal contractor, and that the plaintiff could not sue Hooker under common-law tort principles. The court distinguished *Hendrix* saying that in that case

> the Supreme Court denied compensation benefits to a painter who contracted with defendant to paint its smokestack according to plaintiff's own method for a stipulated price without any assistance or participation by any employees of defendant. The distinctions are obvious. In the present case, the employees of Maury Steel were used for an indefinite time to perform whatever details were assigned to them by Hooker, and employees of Hooker were engaged in the same reconstruction project.

*Id.* at 358. This statement would seem to bring the present case more within the ambit of *Hendrix* than *Carpenter*. But, in its statement of its holding, concededly broader than the facts of the case would necessarily warrant, the Tennessee Court of Appeals said:

> Where a business enterprise undertakes to act as its own general contractor and contracts directly with subcontractors for various phases of construction on its own premises, such business enterprise is subject to the liability imposed by the Workmen's Compensation Law upon general contractors and, consequently is entitled to the immunities conferred by the same law.

*Id.* The facts of the present case are clearly encompassed by this language. It is upon this statement that the district court decided that Union Carbide was a principal contractor in *Posey.*

This Court is of the opinion that *Posey* is correctly decided. *Hendrix* and *Carpenter* taken together compel the conclusion that TVA should be considered a principal contractor within the meaning of section 50–915.

The policy of Tennessee's workers' compensation law supports this conclusion as well. The purpose of section 50–915 is to protect the employees of subcontractors who are not financially responsible, and to prevent employers from relieving themselves of liability by doing through others what they would otherwise do through direct employees.

*Tayloe Paper Co. v. W. F. Jameson Construction Co.*, 211 Tenn. 232, 364 S.W.2d 882, 884 (1963). The Court is persuaded that had the plaintiff not recovered workers' compensation benefits from JM, the Tennessee courts would have compelled TVA to pay them. This means that TVA should be allowed the concomitant immunity from common-law tort claims. TVA was performing all of the functions of a principal contractor. Indeed, TVA stood in the shoes of a principal contractor. *See Chappell, supra*, 305 F.Supp. at 545. The Court perceives no reason that the plaintiff should be allowed to sue TVA when he would not be able to sue another principal contractor in TVA's position.

For the foregoing reasons, the Court is of the opinion that TVA's motion for summary judgment should be granted.

An appropriate order will enter.