(No. 12543.—Reversed and remanded.)

SIMON M. BAUM, Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(CONSTANCE TOMCZYK, Defendant in Error.)

*Opinion filed June 18, 1919.*

1. WORKMEN'S COMPENSATION—*injury need not have been foreseen or expected to arise out of employment.* While there must be some causal relation between the employment and the injury, it is not necessary, in order for an injury to arise out of the employment, that it be one which ought to have been foreseen or expected, but it must be one which after the event may be seen to have had its origin in the nature of the employment.

2. SAME—*when an injury while defending employer's business arises out of employment.* An injury to an employee while defending his employer's business from a mob of strikers who have rushed into the place of employment to interrupt the work going on arises out of the employment, where the employee acts as any man ordinarily would in such an emergency.

3. SAME—*when it is the duty of an employee to save lives of his fellow-workmen.* It is the duty of an employee to do what he can to save the lives of his fellow-workmen when all are at the time working in the line of their employment, and the fact that the fellow-workmen are not actually in danger of losing their lives cannot change the rule, if the danger is clearly apparent to the employee and he acts as any man would under the circumstances.

4. SAME—*when assault arises out of employment.* An assault arises out of the employment in a case where the duties of the employee, under the particular situation, are such as are likely to cause him to have to deal with persons who are likely to attack him.

5. SAME—*rules of evidence apply to hearing before arbitrator.* The usual rules for producing evidence in any legal proceeding apply to a hearing before an arbitrator under the Workmen's Compensation act.

6. SAME—*proceedings under Compensation act are statutory.* Proceedings under the Workmen's Compensation act are purely statutory and the requirements of the statute must govern them.

7. SAME—*circuit court cannot enter money judgment for compensation and order execution.* Under paragraph (*f*) of section 19 of the Workmen's Compensation act the circuit court, on writ of *certiorari,* has authority only to confirm or set aside the decision of the Industrial Commission and is not authorized to enter a judgment directing the payment of the amount of the award and ordering execution to issue, as the employee is fully protected by the bond required of the employer by the act.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. OSCAR M. TORRISON, Judge, presiding.

JOHN CLARK BAKER, for plaintiff in error.

JOSEPH L. LISACK, (JOHN H. MCAULIFFE, of counsel,) for defendant in error.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

This writ of error is brought to review a judgment of the circuit court of Cook county confirming an award by the Industrial Commission against Simon M. Baum, plaintiff in error, of compensation for the death of Edward Tomczyk, who died February 25, 1917, from injuries received February 16, 1917, in a difficulty caused by some strikers raiding the factory where deceased was working. The questions raised are, whether the death of Edward Tomczyk arose out of his employment, whether there was error in the admission of certain evidence, and whether the circuit court in confirming the award of the Industrial Commission erred in entering a money judgment and ordering execution.

Deceased was employed by plaintiff in error, doing business as the Nora Shirtwaist Company, as an assistant cutter in his factory located at Milwaukee avenue and Oakley boulevard, in the city of Chicago. The workroom of this factory is triangular in shape, there being about 5000 square feet of floor space in the room. The entrance to this workroom is from Milwaukee avenue through an outer door, down a passageway and through a second door. At the right of the passageway between the avenue and the workroom was Baum's office. At the time of the difficulty there were employed in the workroom two men and about twenty-five women. Plaintiff in error manufactured wash dresses, shirtwaists and other like wash garments. As assistant cut-

ter it was the duty of deceased to lay out goods and cut it with a knife or a power-driven machine. It appears that on January 13, 1917, plaintiff in error received a letter from the International Garment Workers' Union demanding that he sign up with the union to avoid a strike and other difficulty. On February 14 a strike was called by this union, which strike was more or less general throughout the city of Chicago. None of the employees of plaintiff in error were members of this union and there was no strike at this factory and no trouble existed between employer and employees. Two days later, at about 11:45 A. M., twenty or thirty striking members of this union, men and women, rushed through the passageway past the office and into this workroom, calling upon the employees of plaintiff in error to strike. Plaintiff in error was in his office at the time, and when he saw the crowd rushing into his factory he ran to the rear of his office and tried to prevent the crowd from entering his workroom. He seized a hammer, which was taken away from him by the strikers. He then tried to reach his telephone to call the police but was prevented by the strikers. As the crowd forced its way past plaintiff in error, Tomczyk walked around from his cutting table where he was working and tried to hold them back. The plaintiff in error was standing about four feet away from Tomczyk and there were about six male strikers standing between them. The remaining strikers, men and women, were crowded around plaintiff in error, Tomczyk and the forelady, all the women employees of the factory having fled in a panic. In the course of the riot Tomczyk was stabbed and cried out, "Baum! I am cut!" It was from this wound that he died. The strikers left immediately, throwing bricks through the plate glass windows as they went.

The first question is whether Tomczyk's injury, which was received in the course of his employment, arose out of his employment. The words "arising out of" have reference to the cause or origin of the accident and seem

to indicate that the accident must happen out of the transaction of the business in which the workman is engaged. That would include any accident which might naturally result from the manner in which the business is carried on and which would be considered incidental to the employment itself. This injury was clearly a mishap occurring outside of the usual course of events and was an emergency which arose while Tomczyk was engaged in his work. It is well argued that such a situation could hardly have been contemplated by either the employer or the employee when Tomczyk entered the employment of plaintiff in error. On the other hand, when plaintiff in error failed to sign the agreement with the union it was certain to cause the members of the union to use some measure to compel compliance with their demands. It was generally known that there was a strike in the city of Chicago, and this fact was known to the plaintiff in error. Unfortunately, during the course of a strike and in the excitement of events which occur during a strike trouble quite frequently arises. In view of the general conditions and events that were happening in the immediate vicinity of the factory of plaintiff in error it can hardly be said he should not, as a reasonable person, expect some difficulty with the strikers. While there must be some causal relation between the employment and the injury, it is not necessary that the injury be one which ought to have been foreseen or expected. It must, however, be one which after the event may be seen to have had its origin in the nature of the employment. Such was our holding in *Pekin Cooperage Co.* v. *Industrial Com.* 285 Ill. 31. Where a workman voluntarily performs an act during an emergency which he has reason to believe is in the interest of his employer and is injured thereby, he is not acting beyond the scope of his employment.

It is conceded that Tomczyk was a peaceable and law-abiding citizen. It is also conceded that the strikers rushed into the workroom without any warning and that plaintiff

in error tried to eject them. The evidence shows that there was great excitement in the workroom and that the women employees fled, screaming, to the back of the room. Nothing was said between the plaintiff in error and Tomczyk. Tomczyk, seeing his employer and his fellow-employees in apparent danger, came to the rescue. He was assisting his employer in the defense of his person and his property and was acting in defense of his fellow-employees, all of whom were women. We have held that it is the duty of an employee to do what he can to save the lives of his fellow-employees when all are at the time working in the line of their employment. (*Dragovich* v. *Iroquois Iron Co.* 269 Ill. 478.) That the fellow-employees of deceased were not actually in danger of losing their lives cannot change the rule. The danger was clearly apparent to Tomczyk. He acted as any man would have acted under the circumstances. The rioters had rushed in without warning and threw the women employees into a panic. It was up to deceased to act or to abandon the workroom and its occupants to trespassing strangers, apparently bent upon doing damage to whatever came in their path. The situation was an unusual and unforeseen one and called for quick action. From every point of view it was the duty of deceased to defend himself and his employer and to assist his employer in defending the persons of his women co-workers. Where the trouble arises out of the employer's work, and as a result of it one of the trespassers injures an employee who is defending his employer's business, it may be inferred the injury arose out of the employment. An assault arises out of one's employment in a case where the duties of the employee, under the particular situation, are such as are likely to cause him to have to deal with persons who, under the circumstances, are liable to attack him. (*Ohio Building Vault Co.* v. *Industrial Board,* 277 Ill. 96.) Such was the situation in this case. Deceased was assaulted, not for anything he had done but because he was in the employ of the

plaintiff in error, who was in bad favor with the union on account of not having complied with its demands. We are therefore of the opinion that the injury, which occurred in the course of the employment, arose out of the employment.

It appears that plaintiff in error received a letter from the union demanding that he sign up with it to prevent a strike. It was attempted to prove the contents of this letter by oral testimony. This was error. When an arbitrator hears evidence it must be evidence that is competent and legal as tested by the usual rules for producing evidence in any legal proceeding. (*Victor Chemical Works* v. *Industrial Board,* 274 Ill. 11.) There was, however, competent evidence showing the existence of the strike, and no damage was done plaintiff in error by this ruling. Neither was there any damage done when the plaintiff in error expressed the opinion that deceased was protecting the employer's life and property. He had testified as to what was being done by deceased, and there was sufficient competent evidence to sustain the finding of the commission.

It is contended by plaintiff in error that the circuit court erred in entering a judgment which not only confirmed the award of the commission but also directed the payment of the amount of the award and ordered execution. The proceedings in cases of this character are purely statutory, and it is a settled rule that the requirements of the statute must govern and control them. These proceedings were under paragraph (*f*) of section 19 of the Compensation act, and the only authority of the court under this paragraph is to confirm or set aside the decision of the Industrial Board. From a consideration of the whole act it would appear that the legislature intended that the employer might protect himself against a judgment for payment of the award by performing certain optional conditions. Paragraph (*g*) of the same section provides that when the proceedings are under that section "no judgment shall be entered in the

event the employer shall file with the said board its bond, with good and sufficient surety in double the amount of the award, conditioned upon the payment of said award in the event the said employer shall fail to prosecute with effect proceedings for review of the decision, or the said decision upon review shall be affirmed." Paragraph (*f*) of the same section (the one under which these proceedings are brought) provides that the writ of *certiorari* shall not issue until the employer has filed with the circuit clerk "a bond conditioned that if he shall not successfully prosecute said writ or said suit he will pay the said award, and the costs of the proceedings in said court. The amount of the bond shall be fixed by any member of the Industrial Board and the surety or sureties on said bond shall be approved by the clerk of said court." Such a bond was filed in this case. These provisions to prevent judgments are made to avoid incumbering the employer's property with accumulative liens that in many cases would not be discharged for many years and might run for the life of the employee. These judgments might accumulate until the defect in the title of the employer's real estate would make it unmarketable. The employee is fully protected by the bond required by the statute. The court in this case had only such power on *certiorari* as the statute gave, and that was to confirm or set aside the decision of the commission. There is nothing in the statute to authorize a judgment directing the payment of the amount of the award and ordering execution to issue.

The judgment is reversed and the cause remanded, with directions to enter an order confirming the decision of the Industrial Commission.

*Reversed and remanded, with directions.*