Mrs. Georgia Smith *v.* Morristown Poultry Company, Inc., and Employers Liability Co. of Wisconsin.

(*Knoxville*, September Term (May Session) 1954.)

Opinion filed June 10, 1955.

S. J. Anderson, of Morristown, for appellants.

George W. Jaynes and Earnest R. Taylor, both of Morristown, for appellee.

Mr. Special Justice Clement delivered the opinion of the Court.

This is a Workmen's Compensation case. The Trial Judge found that petitioner was injured in the course of her employment; that she suffered certain temporary total disability, and certain permanent partial disability on account of injuries to her eye, ear, nose and head, and that her ability to see in her right eye was permanently reduced by fifty percent, and that by reason of said injuries her earning capacity is permanently reduced by fifty percent. The Court allowed petitioner certain medical expense and gave the employer and his insurance

carrier a credit of $144 for overpayments on temporary total disability, and further decreed that the defendants pay petitioner the minimum payment as provided by statute, of $12 per week for 150 weeks, on account of the permanent partial disability.

From this judgment the defendants have appealed and assigned the following errors: (1) The Court erred in disregarding the testimony of Dr. Montgomery, eye-specialist, and in finding that petitioner had a 50% disability to her eye and a 50% reduction in earning capacity as a result that there was no material evidence to support the finding. (2) The Court erred in finding that petitioner had a 50% permanent reduction in earning capacity as a result of the accident, the true test being disability of the non-scheduled member apportioned to the body as a whole.

Petitioner is a woman 48 years of age, uneducated, and had been working for the defendants' company for several years. Her duties were picking, dressing, and processing chickens. She had engaged in this line of work for 32 years, or since she was 16 years of age.

On the morning of January 1, 1954, she was struck on the forehead, over the right eye, by a shackle, (a metal device on which chickens are placed). While the record does not go into detail as to exactly how the injury occurred, the petitioner states that "the shackle came back and hit me on the head."

There is no insistence that the injury did not rise out of and in the course of her employment.

She was first sent to a local doctor, one Doctor Chambers, an Optometrist. He treated her for several days and she was then sent to Doctor Kinser, a medical doctor and surgeon. Her face and eye were swollen and Doctor Kinser treated the petitioner about six weeks.

Petitioner was then sent to Doctor Montgomery, at Knoxville. Doctor Montgomery is a specialist in the treating of eye, ear and nose ailments.

Petitioner insists that she has suffered pain since the injury to her eyes, ears and head. She admits that after she was released by the doctor she obtained employment from the Burnett Produce Company, doing practically the same type of work that she did before the injury, at the same rate of pay, but she insists that her work is painful; that her eye fills with water; that it keeps her busy wiping her eye, and that the work is much more of a strain on her than before the injury, and that since the injury she is unable to read. She further states that she cannot hear out of her right ear as well as she could before the injury.

Doctor Kinser, petitioner's witness, testified that he first saw the petitioner on January 5, 1954; that she had an extreme swelling in her right eye and a blockage of the lacrimal gland and duct. That the patient did not respond as fast as he had hoped, and after six weeks of treatment he referred her to a specialist, Doctor John Montgomery in Knoxville.

This witness further testified that two days prior to the trial, which was October 22, 1954, he examined petitioner and found that she had undergone an operation on the duct which had satisfactorily partially healed her eye, but she still had some swelling and tenderness. He described the duct as a drainage pipe to the eye and the lacrimal gland as the producer of tears which are necessary to keep the eyeball from drying out.

He further described the duct as draining into the nose which serves to drain off any minute particles of infection or foreign matter.

He further testified that an abscess had formed, blocking off the duct and that an operation was necessary and was performed by Doctor Montgomery. Briefly, the operation was described as shortening the duct and placed the drainage into her nose at a different place, in other words it was necessary to make another opening into the nasal enclosure.

Without going further into the technical description of the operation by Doctor Kinser, he finally was asked this question:

"Q. Dr. Kinser, basing your answer on your experience as a practicing physician, and on your examination and treatments of Mrs. Smith, the petitioner, do you have and can you state a professional opinion with reference to whether or not she is now suffering from any permanent disability as a result of the blow to her head or an infection to her eye? A. In my opinion she has a permanent disability.

"Q. In your opinion, assuming that the only occupation that she knows is that of a poultry dresser, does this permanent disability affect her ability to engage in any gainful occupation? A. In my opinion, it does.

"Q. To what extent? A. In my opinion she is 50% disabled."

The defendant's witness, Doctor John L. Montgomery, a specialist in eye, ear, nose and throat, testified that he first saw the petitioner on February 22, 1954. That he incised the lacrimal sac and packed it in order to keep the wound open, and that this procedure was continued with frequent instillations of penicillin and irrigation until May 9th, at which time he decided that no further benefit could be had by continuing the local therapy. That on that date he performed an operation which he described

as, "anastomosing the lacrimal duct to the nasal mucous membrane," and that she was discharged from the hospital on May 15th. That he subsequently saw petitioner on May 18th, 22nd, 28th, June 11th, and July 6th and 9th. That on July 11th he advised the petitioner that she might return to work and that was the last time he saw her, and that there was every indication that the operation was successful.

He also testified:

"Q. Could this condition which you described affect the sight in the right eye? A. Well now, let's put it this way, if this tear sac or duct does not function properly there can be an accumulation of tears in the eye with resulting blurring of vision being a great difficulty in working. As a matter of fact it would be impossible to do some types of work.

"Q. In this particular case was there any disability to the eye? A. There was definitely until this operation procedure was accomplished.

"Q. And after the operation was there any disability? A. I do not feel that there is at the present time.

"Q. Could there be any disability? A. Really I haven't seen her since July 9th. Taking that into consideration * * *.

"Q. Could there be any permanent disability to the nose as a result of this situation? A. Yes, Yes. You have an opening into the nose, but I do not see that it could cause any permanent disability. We will see that there is a permanent change there in the way that those tears go into the nose."

On cross-examination the doctor was asked:

"Q. In your opinion Doctor, is this woman, after your operation in her eye, and the glands in the nose

in as good a condition as she was before she sustained the injury that caused that? A. I have never made the statement that an injury caused it, and of course one can not say she is in as good shape as she was, because an operation procedure has replaced what Mother Nature gave her."

The first assignment of error complained of the fact that the trial judge disregarded the testimony of the specialist, Doctor Montgomery, and adopted the testimony of petitioner's witness, Doctor Kinser. But we cannot say that the trial court disregarded the testimony of the specialist, Doctor Montgomery, for in fact this witness testified that he had not seen petitioner since July 9th, and that there could be permanent disability to the nose and that her condition was not as good as before the operation.

As has been often said this Court is bound by the Trial Judge's finding of the preponderance of the evidence, if supported by any material evidence.

In the case of *Anderson* v. *Volz Const. Co.*, 183 Tenn. 169, 191 S. W. (2d) 436, 438, this Court speaking through the late Justice Gailor said:

"On appeal under the Workmen's Compensation Act, we do not reweigh the evidence, but search the record only so far as is necessary to determine that there is material evidence to support the finding of the trial judge. Tennessee Products Corporation v. Gravitt, 182 Tenn. 54, 184 S. W. (2d) 164; Tipton v. North America Rayon Corp., 181 Tenn. 434, 181 S. W. (2d) 619. The weight of evidence and the credibility of the witnesses are finally determined in the trial court."

We feel that there was material evidence in the

lower court for the trial judge to find in favor of petitioner and therefore such finding is binding on this Court.

The next assignment is that the Court erred in finding that petitioner had a 50% permanent reduction in earning capacity as a result of the accident, the true test being disability of the non-scheduled member apportioned to the body as a whole.

The Public Acts of 1953, Chapter 111, Section 2, relative to permanent partial disability reads as follows:

"All other cases of permanent partial disability not above enumerated shall be apportioned to the body as a whole, which shall have a value of 300 weeks, and there shall be paid compensation to the injured employee for the proportionate loss of use of the body as a whole resulting from the injury."

The law prior to this amendment was at follows: Williams' Code Section 6878:

"Permanent partial disability in certain cases. In cases of permanent partial disability due to injury to a member resulting in less than total loss of use of such member not otherwise compensated in this schedule, compensation shall be paid at the prescribed rate during that part of the time specified in the schedule for the total loss or total loss of use of the respective member, which the extent of injury to the member bears to its total loss."

We cannot see that the 1953 amendment is any help to the defendants in the case at bar, in fact it seems to us that the law was liberalized in favor of the injured employee.

It is insisted by the defendants that petitioner has not suffered any permanent disability as she testified that she was earning as much after the injury as before.

In the case of *Greenville Cabinet Co.* v. *Ramsey,* 195

Tenn. 409, 260 S. W. (2d) 157, 159, the late Justice Gailor stated:

"We approve the following statement of the Trial Judge in this connection:

"The evidence shows that the petitioner is not as able to work now as he was before the injury. Dr. Coolidge says he is totally disabled from positions requiring much, if any, physical exertion. It is not what he is earning, but what he is able to earn generally. In his present condition he is not a merchantable product. He is not as able to earn the income now that he was before the injury and operation. Some particular employer might have some reason to employ him, but he is not in his present condition fit for the general employment market. He is an odd lot and not fit for general employment."

The question before the Court is whether or not in the open labor market the petitioner, in her disabled condition, is able to earn after the injury, in spite of her disability, as much as she was able to earn before the injury.

While it is true that at the time of the trial she was earning 75¢ per hour and doing the same type of work which petitioner did before her injury, she testified that she was doing so under strain and suffering. She is strongly supported by Doctor Kinser, who described the conditions that might be expected exactly as she says they exist, and even the defendants' witness, Doctor Montgomery, agrees with petitioner that these conditions could exist under certain conditions.

As before stated, this Court does not reweigh the evidence, but searches the record only so far as is necessary to determine that there is material evidence to support the findings of the Trial Judge.

We think there is material evidence to support the findings of the Trial Judge, and the assignments of error are overruled.

The judgment will be affirmed at the cost of the defendants.