W. S. Dickey Manufacturing Company

*v.*

A. C. Moore.

(*Knoxville,* September Term, (May Session) 1960.)

Opinion filed May 26, 1961.

CAMPBELL & CAMPBELL, Chattanooga, for plaintiff in error.

MAURICE M. WEAVER, Chattanooga, for defendant in error.

MR. JUSTICE BURNETT, delivered the opinion of the Court.

This is a Workmen's Compensation case in which the trial judge found in favor of the petitioner; that the petitioner suffered temporary, total disability on August 25, 1959, through November 14, 1959, and that he suffered permanent disability to the body as a whole for which he awarded petitioner one hundred (100) weeks for the loss of an eye and eighty (80) weeks for injuries to the body as a whole. From this award the employer has seasonably perfected its appeal, briefs have been filed and arguments heard. We now have the matter for disposition after reading the briefs, the record, and authorities cited and others.

The petitioner, Moore, is a Negro man sixty-seven (67) years of age, and had been at the time of the injury employed by the employer at its plant for thirty-five (35) years. Petitioner's job was that of a "hacker", that is, to load and unload tile pipes from the kilns.

On the date of the accident the petitioner brought in a load of pipes to the "Butler building" where one Parker, a white man about half the age of petitioner, was working as a laborer. A piece of the pipe had been broken off and Parker made some remark to the petitioner to the effect that he was mighty weak, etc. As a result of these remarks the petitioner responded that Parker better take care of his own business.

After these remarks petitioner went about his work like nothing had happened and worked until he had un-

loaded his pipes, and then put the culls out of his load on a buggy and rode down to the western part of the yard to unload the culls. He then came back to the "Butler building" where Parker was working. This consumed about ten or fifteen minutes of time, or something near that, and then as petitioner returned along the road between the kilns to the "Butler building" he got off the tractor and according to him continued towards the building to tend to his duties, and as he took "a step or two" he saw Parker and heard Parker mumble something that he did not understand. It is the petitioner's contention that Parker struck him a crushing blow along the left side of his face with a shovel handle. This shovel handle had been discarded in a garbage can to the right of the door of the "Butler building" a few days before.

Out of this state of facts the trial judge found that "this altercation arose solely out of the employment relationship over a matter concerning working conditions and that Parker, the fellow employee, was the aggressor." The trial judge further found that this fellow worker, Parker, "is a person of vicious, malicious and dangerous character and unworthy of belief."

█ Of course, it has been repeatedly decided by this Court without exception that the believability of witnesses who appear before the trier of facts and testify therein is for this trier of facts. When there is any material evidence to support such a finding this Court will not, and does not, interfere with the finding as to credibility of the witness and as to the facts as they appear to the trial judge.

█ The defense, as presented herein, is two-fold; first, that the injuries grew out of an assault in which

it is claimed that petitioner, the injured workman, was the aggressor in that at the time of the assault he was going to his pocket for a knife and that Parker hit him in self-defense. This is denied and the trial judge accepted the contrary theory, that is, that the assault was not brought on by any acts of the petitioner in going for a knife, etc. There is material evidence to support this finding of the trial judge. Then, the further defense is that the injuries did not arise out of and in the course of the employment, but were due to a personal difficulty between Parker and the petitioner. Thus it is that we have the question squarely presented for our decision.

A very interesting statement is made in *Stertz v. Industrial Ins. Com.*, 91 Wash, 558, 158 P. 256, 258, Ann. Cas.1918B, 354, clearly showing the distinction between the Workmen's Compensation Act and the law of negligence. This statement is:

"Both had suffered under the old systems; the employers by heavy judgments * * * the workmen through the old defenses or exhaustion in wasteful litigation. Both wanted peace. The master, in exchange for limited liability, was willing to pay on some claims in the future, where in the past there had been no liability at all. The servant was willing, not only to give up trial by jury, but to accept far less than he had often won in court; provided he was sure to get the small sum without having to fight for it."

In Vol. 1 of Larson on Workmen's Compensation, Section 11.12, page 117, the author of this work makes the following very succinct and applicable statement as to a factual situation as involved in the instant case. He says:

"Similarly, it is universally agreed that if the assault grew out of an argument over the performance of the work, the possession of the tools or equipment used in the work, and the like, the assault is compensable."

There are many authorities cited in the footnote under this statement which amply support it.

 As we have often said, the meaning of the phrase "out of and in the course of employment" is not to be determined by the rules which control in cases of negligent default at common law, for one of the purposes of the Compensation Act is to increase the right of employees to be compensated for injuries growing out of their employment. There must be some causal relation between the employment and the injury; but, if the injury is one which after the event, may be seen to have had its origin in the employment, it need not be shown that it is one that ought to have been foreseen or expected. *Baum v. Industrial Commission,* 288 Ill. 516, 123 N.E. 625, 6 A.L.R. 1242.

In our years of experience in trying Workmen's Compensation cases and reading various authorities over the country on the question, we find that the courts generally, especially in recent years, have applied various facts in establishing the principle above stated. In *Markell v. Daniel Green Felt Shoe Co.,* 221 N.Y. 493, 116 N.E. 1060, it was held that where an employee in the shoe factory, who had been repairing machines, was approached from behind by another employee in a dark room and his arms were placed around the claimant's neck and his head was drawn against a lead pencil which injured the claimant's eye, that the injury was compensable. Then there is Judge Cordoza's famous opinion in *Leonbruno v. Cham-*

*plain Silk Mills*, 229 N.Y. 470, 128 N.E. 711, 712, 13 A.L.R. 522, wherein that court said:

> "The risks of injury incurred in the crowded contacts of the factory through the acts of fellow workmen are not measured by the tendency of such acts to serve the master's business. Many things that have no such tendency are done by workmen every day. The test of liability under the statute is not the master's dereliction, whether his own or that of his representatives acting within the scope of their authority. The test of liability is the relation of the service to the injury, of the employment to the risk."

There could be many more similar expressions and similar reasoning given. There are likewise cases to the contrary. But, we think the rule based on this reasoning is clearly shown by an opinion of Justice Rutledge in *Hartford Accident & Indemnity Co. v. Cardillo*, 72 App. D.C. 52, 112 F.2d 11, 18, wherein that court rejected the assault and aggressor theory. In that case the claimant's supervisor had been calling him "Shorty"; claimant then called his supervisor a vile name; whereupon the supervisor struck the claimant. The court awarded compensation on the theory and ground that Shorty's use of a vile name did not equal the aggression. The court said:

> "Claimant may have been at fault, but he was the aggressor neither in the banter nor in the physical encounter."

In all of these cases there is the underlying principle running through them that causal connection is supplied when there is a showing of an environment that increases the likelihood of assault. In other words, when

the employment increases the probability of quarrels among the employees and one is thus injured, then such injury is compensable under the Act for the very obvious reason that workmen, as such, carry their personal qualities, weaknesses, emotions and tempers with them to work, and the risk of having these tempers fly up is comparable in a way to overstrained machinery.

Of course, where one employee assaults another solely to gratify his feeling of anger or hatred such an act results from the voluntary act of the assailant and cannot then be said to arise either directly out of the employment or as an incident thereto. When, though, the employee is assaulted when the assault was incidental to some duty of his employment as the facts herein show that this was, such a result as happens from the assault is ordinarily held to rise out of the employment. A very similar and like incident to that herein is found in *Anderson v. Hotel Cataract*, 70 S.D. 376, 17 N.W.2d 913, 917, wherein the court said:

"But for that employment and the presence of decedent at his post of duty in the engine room, the assault would not have been made * * * Painter's opinion of deceased's capability was generated by their association in the employment, and his disparaging statements, which set forces in motion culminating in the assault, were directed at deceased as an employee."

Clearly, under the factual situation hereinabove set forth, such a statement of the South Dakota court is applicable herein.

Such cases as *Sandlin v. Gentry*, 201 Tenn. 509, 300 S.W.2d 897, are sought by the employer to be applied to the instant facts as controlling. In the Sandlin case we

held that the acts therein were not compensable. In that case though the employee killed was the aggressor and it was from these acts that his resulting injuries were received which caused his death.

The trial judge found in the instant case that the employee was not the aggressor and thus his injuries were due to the aggression of the fellow servant who assaulted him for acts that grew out of their contact as fellow employees. Thus it is that the Sandlin case is not in point. Most cases that we find have held that where the accident is due to and the party who is injured is the aggressor in the fight, then compensation cannot be recovered. Then there are the cases which hold that where there is a sufficient cooling off period from the time of the accident back to when the words of the argument started compensation cannot be recovered, and in all of the older cases the question of compensation seems to be pinned on the proposition of whether or not there was a sufficient cooling off time. But as to whether or not this is logical and fair under our compensation act the later cases seem to be getting away from this proposition. On this question of a cooling off period Mr. Larson in Section 11.14, at page 121, makes this very reasonable comment:

"If the employment in fact causes the employees to get into arguments even about matters which on paper are none of their business, it is still possible to say in a broader sense, that the argument arose out of the employment."

Complaint is likewise made as to the trial judge's allowance of the eighty (80) weeks for permanent disability to the body as a whole. The trial judge in his finding says that there is no question but that the man has

lost his eye and that the doctors differ as to what the permanent disability is, one doctor saying one thing and one another, and then says:

"Another specialist testified that petitioner suffered a 'comminuted fracture of the left third of his face', and that 'his face was literally pulverized in parts', that later, petitioner's heart stopped temporarily. With this testimony and petitioner's testimony to the effect that he was hospitalized for two period totalling twenty-five days that 'he has no grip in his left hand' that 'he suffers dizzy spells', that he has to 'sit down' and that since the injury he is unable to work, the Court is of the opinion that he must of certainty have permanent disability to his head and face (sinus cavities, etc.)."

In view of this finding of the trial judge, who had all these parties before him to observe and see and hear the witnesses, certainly there is ample material evidence to support this finding. Such a finding even though there is a specific statutory loss is compensable. *Plumlee v. Maryland Cas. Co.*, 184 Tenn. 497, 201 S.W.2d 644; *Smith v. Morristown Poultry Co.*, 198 Tenn. 412, 280 S.W.2d 929; and others.

After carefully considering the questions here presented we feel satisfied that the trial court reached the right conclusion and that the acts herein committed are compensable. The judgment must be affirmed.