

**FILED**

**July 2, 2015**

**TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD**

**Time: 9:40 AM**

## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | | |
|---|---|---|
| Employee: Eden Johnson | ) | Docket No. 2014-06-0069 |
| | ) | |
| Employer: Wal-Mart Associates, Inc. | ) | State File No. 85475-2014 |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 2nd day of July, 2015.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|---|---|---|---|---|---|---|
| **Tim Bowden** | | | | | X | Bowden1lydia@gmail.com; Bowden_law@bellsouth.net |
| **Jay Johnson** | | | | | X | jay@cmwatsonlaw.com |
| **Kenneth M. Switzer, Chief Judge** | | | | | X | Via Electronic Mail |
| **Penny Shrum, Clerk, Court of Workers' Compensation Claims** | | | | | X | Penny.Patterson-Shrum@tn.gov |

Matthew Salyer
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: Matthew.Salyer@tn.gov

**FILED**

**July 2, 2015**

**TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD**

**Time: 9:40 AM**



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Employee: Eden Johnson ) | Docket No. 2014-06-0069 |
| ) | |
| Employer: Wal-Mart Associates, Inc. ) | State File No. 85475-2014 |
| ) | |
| ) | |
| Appeal from the Court of Workers' ) | |
| Compensation Claims ) | |
| Kenneth M. Switzer, Chief Judge ) | |

---

**Affirmed and Remanded – Filed July 2, 2015**

---

## OPINION AFFIRMING AND REMANDING
## INTERLOCUTORY ORDER OF COURT OF WORKERS' COMPENSATION
## CLAIMS

This interlocutory appeal involves an employee, a door greeter, who suffered multiple injuries from being struck in the face by a customer when she attempted to prevent the customer from using a motorized shopping cart. The employer denied the claim based upon its belief the employee had violated its violence-free workplace policy and terminated her employment. Following an expedited hearing, the trial court granted, in part, the employee's request for medical and temporary disability benefits and rejected the employer's willful misconduct defense. The trial court also denied a motion filed by the employer to dismiss the case based upon the employee's failure to timely request an expedited hearing and her failure to file a supporting affidavit. The employer has appealed. Having carefully reviewed the record, we affirm the trial court's decision and remand the case for further proceedings as may be necessary.

Judge Marshall L. Davidson, III, delivered the opinion of the Appeals Board, in which Judge David F. Hensley joined. Judge Timothy W. Conner concurred in part and

1

dissented in part.

Jay Johnson, Henderson, Tennessee, for the employer-appellant, Wal-Mart Associates, Inc.

Tim Bowden, Goodlettsville, Tennessee, for the employee-appellee, Eden Johnson

### Factual and Procedural Background

Eden Johnson ("Employee"), a seventy-six-year-old resident of Davidson County, Tennessee, was employed by Wal-Mart Associates, Inc. ("Employer") as a door greeter when she was struck in the face by a customer and knocked unconscious on October 28, 2014. On that date, Employee was performing her duties near the front of the store when a customer ran into the store and sat on a motorized shopping cart. Employee informed the customer that she could not use the cart because the carts were for physically challenged customers only, at which point the customer asked Employee to get a manager. As Employee was walking away to find a manager, the customer began to drive the cart further into the store. In an attempt to stop the moving cart, Employee grabbed the back of the cart, and a surveillance video of the incident shows the customer's head tilting backward. According to Employee, the customer moved her head on her own because Employee did not touch her.[1] The customer suddenly turned from her seated position on the cart and punched Employee in the face, knocking her out. Other surveillance video, shot from different angles, shows Employee conversing with the customer, but does not show the assault itself.

Employee was transported by ambulance to a hospital where she was treated for her injuries. The next day, she was treated by her primary care physician, Dr. Marcus Min. Dr. Min wrote as the "reason for appointment" that Employee "[w]as assaulted last night at walmart, patient does not remember being hit, only knows patient was hit threw [sic] watching video tape." Dr. Min excused Employee from work for two weeks.

Employee testified that she did not know the customer who hit her, meant her no harm, and had not previously been in a fight. Employee also testified that, as a door greeter, her duties included monitoring the motorized carts. She stated, without contradiction, that multiple managers, including the "top manager," instructed her that the carts were for physically challenged customers only. She testified further that a supervisor instructed her to inform customers the carts were solely for those who needed them and "to make sure that the only people that use the carts are the disabled ones."

---

[1] Although the customer who assaulted Employee did not testify at the expedited hearing, her statement was introduced into evidence. According to the customer's statement, Employee grabbed her hair and clothing. Employee denied doing so, and surveillance video contained in the record appears inconclusive on this point. The trial court resolved this factual dispute in Employee's favor.

When Employee was hired in January 2014, her training included exposure to Employer's "Violence-Free Workplace Policy," a document that prohibits two categories of conduct, "violence" and "possession of weapons." Regarding "violence," the policy states the following:

> We prohibit any form of violence or threat of violence in or affecting the workplace, other associates or our customers/members. This includes, but is not limited to, any conduct or communication (whether direct or indirect) which: 1) harms, damages, injures, harasses, intimidates, bullies, threatens, stalks, taunts, forces, coerces, restrains or confines another person; 2) reasonably causes another person to fear for his/her health or safety; or 3) intentionally harms or damages property.

Although Employee believed that her actions did not amount to a violation of the policy, she readily acknowledged grabbing the back of the cart in an attempt to stop its unauthorized use.

Jay Sizemore, Asset Protection Manager for Employer, testified that any customer can use a motorized cart and that the job description for greeters does not "technically" entail overseeing the use of the carts. However, he stated that it may have been "deemed appropriate" at the store where Employee worked. Mr. Sizemore did not know whether Employee had been instructed by management that the carts were for customers with disabilities only. Mr. Sizemore indicated that, in his view, putting one's hand on the back of a cart is not an assault, but rather "infringing upon somebody's personal space" such that they might feel threatened. He also testified that employees are prohibited from touching customers, but he acknowledged Employee did not strike the customer and was defending against the customer's blow rather than throwing one. He further stated, "I can't say [Employee] intentionally did anything to the customer, but I can say she intentionally tried to get the customer off the mart cart."

Diana Henry, the Personnel Coordinator for the store where Employee worked, oversaw Employee's training. Ms. Henry, who neither witnessed nor investigated the incident at issue, confirmed that Employee received training on the Violence-Free Workplace Policy. She also testified that employees are prohibited from touching customers and that Employer enforces its Violence-Free Workplace Policy. Further, she indicated that, in her opinion, Employee's holding on to the cart violated the policy, but she did not believe Employee violated any policy in overseeing the carts as a part of her job as a greeter. In response to questioning about what she saw on the video, Ms. Henry agreed that Employee did not commit an act of violence against the customer who assaulted her. Like Mr. Sizemore, Ms. Henry did not know whether Employee's supervisors told her to allow only physically challenged customers to use the carts.

3

Employer provided neither medical nor temporary disability benefits, prompting Employee to file the instant action. Following unsuccessful mediation efforts, a Dispute Certification Notice was filed on December 23, 2014. Employee filed a Request for Expedited Hearing on April 8, 2015. Following the expedited hearing, the trial court denied Employer's motion to dismiss the case based upon Employee's failure to timely request an expedited hearing and her failure to file a supporting affidavit. As to the merits of the claim, the trial court ruled that Employee did not violate Employer's Violence-Free Workplace Policy, rejected Employer's willful misconduct defense, and determined that Employee's injuries arose primarily out of and in the course and scope of her employment. Accordingly, the trial court directed Employer to provide medical benefits, specifically a panel of physicians, but declined to order the payment of past medical expenses based on a finding that Employee failed to prove the necessity and reasonableness of the charges incurred. In addition, the trial court found that Employee was entitled to temporary total disability benefits for the two weeks she was taken off work. Employer timely appealed, and the record was submitted to the Appeals Board on June 23, 2015.

## Standard of Review

The standard of review to be applied by this Board in reviewing a trial court's decision is statutorily mandated and limited in scope. Specifically, "[t]here shall be a presumption that the findings and conclusions of the workers' compensation judge are correct, unless the preponderance of the evidence is otherwise." Tenn. Code Ann. § 50-6-239(c)(7) (2014). The trial court's decision must be upheld unless the rights of a party "have been prejudiced because findings, inferences, conclusions, or decisions of a workers' compensation judge:

(A) Violate constitutional or statutory provisions;
(B) Exceed the statutory authority of the workers' compensation judge;
(C) Do not comply with lawful procedure;
(D) Are arbitrary, capricious, characterized by abuse of discretion, or clearly an unwarranted exercise of discretion; or
(E) Are not supported by evidence that is both substantial and material in the light of the entire record."

Tenn. Code Ann. § 50-6-217(a)(3) (2015). Like other courts applying the standards embodied in section 50-6-217(a)(3), we will not disturb the decision of the trial court absent the limited circumstances identified in the statute.

4

## Analysis

### A. Motion to dismiss

Employer moved to dismiss the case on the basis that Employee failed to timely request an expedited hearing. The pertinent regulation, Tenn. Comp. R. & Regs. 0800-02-21-.12(1) (2014), provides as follows:

> Immediately after a dispute certification notice has been filed with the clerk, either party seeking further resolution of any disputed issues shall file a request for hearing with the clerk. . . . If no request for hearing is filed within sixty (60) calendar days after the date of issuance of the dispute certification notice, the clerk shall docket the case and place the case on a separate dismissal calendar for a show cause hearing. The clerk shall send notice of the hearing to the parties, via regular or electronic mail, indicating the claim number, the time of the hearing and the judge assigned to the case. Either party may appear to show cause as to why the case should not be dismissed.

Here, the Dispute Certification Notice was filed on December 23, 2014, and the Request for Expedited Hearing was filed more than sixty days later on April 8, 2015, prompting Employer's motion to dismiss. The trial court properly denied the motion.

On appeal, Employer makes no argument addressing this issue other than the trial court "improperly denied pre-hearing motions to dismiss." Employer did argue in the trial court that inclusion of the word "shall" in the first sentence of the regulation requires dismissal of the case. In our view, however, Employer's argument ignores the rest of the regulation, which sets out a procedure to follow when an expedited hearing is not requested within the specified timeframe, i.e., a show cause hearing is held so that the trial court can determine if the parties intend to take further action in the case. Accepting Employer's argument that a case must be dismissed if an expedited hearing request is not filed within sixty days of the filing of the Dispute Certification Notice would render most of the regulation, which has the force and effect of law, superfluous. *See Kogan v. Tenn. Bd. of Dentistry*, No. M2003-00291-COA-R3-CV, 2003 Tenn. App. LEXIS 933, at *17 (Tenn. Ct. App. Dec. 30, 2003).

We also note that the trial court did precisely what the regulation requires when an expedited hearing request is not filed within sixty days of the filing of the Dispute Certification Notice. The trial court set and conducted a show cause hearing and then directed Employee to file a Request for Expedited Hearing, which she did. This issue has no merit.[2]

---

[2] Employer's motion also sought dismissal of the case based upon Employee's failure to file an affidavit

5

## B. *Arising primarily out of and in the course and scope of employment*

To be compensable under the workers' compensation statutes, an injury must arise primarily out of and occur in the course and scope of the employment. Tenn. Code Ann. § 50-6-102(13) (2014). Injury is defined as "an injury by accident . . . arising primarily out of and in the course and scope of employment, that causes death, disablement or the need for medical treatment of the employee." *Id.* For an injury to be accidental, it must be "caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence." Tenn. Code Ann. § 50-6-102(13)(A) (2014).

The statutory requirements that an injury arise out of and in the course of the employment are not synonymous "although both elements exist to ensure a work connection to the injury for which the employee seeks benefits." *Blankenship v. Am. Ordnance Sys.*, 164 S.W.3d 350, 354 (Tenn. 2005). An injury occurs in the course of employment if it takes place while the employee was performing a duty he or she was employed to perform. *Fink v. Caudle*, 856 S.W.2d 952, 958 (Tenn. Workers' Comp. Panel 1993). Thus, the course of employment requirement focuses on the time, place, and circumstances of the injury. *Saylor v. Lakeway Trucking, Inc.*, 181 S.W.3d 314, 318 (Tenn. 2005). By contrast, arising out of employment refers to causation. *Reeser v. Yellow Freight Sys., Inc.*, 938 S.W.2d 690, 692 (Tenn. 1997). An injury arises out of employment when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury. *Fritts v. Safety Nat'l Cas. Corp.*, 163 S.W.3d 673, 678 (Tenn. 2005). Put another way, an injury arises out of employment when it "has a rational, causal connection to the work." *Braden v. Sears, Roebuck & Co.*, 833 S.W.2d 496, 498 (Tenn. 1992).

Applying the foregoing principles to the record before us, it is clear the customer's assault upon Employee originated from Employee's attempt to monitor the use of the motorized carts. Indeed, the entire focus of the dispute was related to the employment setting, as opposed to being an entirely private dispute imported into the workplace or a random assault by a third person unconnected to Employer's business. Further, at the time of the incident, Employee was acting within her role as a door greeter which, by all accounts, included overseeing the carts. Thus, we conclude, as the trial court did, that Employee's injury "has a rational, causal connection to the work." *Braden*, 833 S.W.2d at 498; *see also W.S. Dickey Mfg. Co. v. Moore*, 347 S.W.2d 493, 496 (Tenn. 1961) (when an assault upon an employee is "incidental to some duty of his employment . . . the assault is ordinarily held to [a]rise out of the employment").

---

in support of her request for an expedited hearing as required by Tenn. Comp. R. & Regs. 0800-02-21-.14(1)(a) (2014). Employer, however, elected not to press the issue in the trial court. Thus, we need not address it on appeal.

6

Further, as noted above, the course of employment requirement is satisfied when the injury occurs within the time and place limitations of the employment relationship and during an activity connected to the employee's duties. *Saylor*, 181 S.W.3d at 318. Here, there is no dispute that the assault upon Employee occurred on Employer's premises during working hours. Similarly, there is no dispute that Employee was attempting to address an issue pertaining to her job responsibilities when she was struck. Although Employer argued in the trial court that Employee was not performing a duty contained in the written job description for greeters, Employee testified that her responsibilities included monitoring the carts. She stated that multiple managers, including the "top manager," instructed her that the carts were for physically challenged customers only and that she was "to make sure that the only people that use the carts are the disabled ones." This evidence was uncontradicted. Mr. Sizemore himself testified that such a task "may have been deemed appropriate" at Employee's store location.

Accordingly, we conclude that, based upon the record as it currently exists, there is sufficient evidence from which the trial court could determine that Employee is likely to prevail at a hearing on the merits concerning whether she suffered an injury that arose primarily out of and in the course and scope of her employment. In reaching this conclusion, we are mindful that an employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Instead, at an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.* Such is the case here.

### C. Willful misconduct

Tennessee law recognizes that, in some instances, a worker's willful misconduct can preclude a recovery. *See* Tenn. Code Ann. § 50-6-110(a)(1) (2014) ("No compensation shall be allowed for an injury or death" stemming from an "employee's willful misconduct."). The willful misconduct defense consists of four elements: (1) the employee's actual, as opposed to constructive, notice of the rule, (2) the employee's understanding of the dangers involved in violating the rule, (3) the employer's bona fide enforcement of the rule, and (4) the employee's lack of a valid excuse for violating the rule. *Mitchell v. Fayetteville Public Utilities*, 368 S.W.3d 442, 453 (Tenn. 2012). The burden of establishing the defense rests upon the employer. Tenn. Code Ann. § 50-6-110(b) (2014).

In this case, the trial court found that Employee did not violate Employer's Violence-Free Workplace Policy. The trial court observed that it was "particularly compelling" that Ms. Henry, the training coordinator, did not believe Employee had

committed an act of violence. The record does not preponderate against the trial court's finding.

While it is true that Employee received the policy before she was assaulted and understood the policy was meant to protect employees, the trial court had before it Employee's plausible explanation for why her conduct did not violate its terms. Employee testified that she did not touch the customer, pull her hair, or otherwise "harass, intimidate, bully, threaten, [or] stalk" her. Employee further testified that she did "not cause another person to fear for his/her health or safety [and] did not intentionally harm or damage property." Employee did acknowledge grabbing the back of the cart to stop its unauthorized use but, according to Employee, "that was within the policy" because she had "to take care that the carts be used only by disabled people." Indeed, her testimony that a supervisor instructed her "to make sure that the only people that use the carts are the disabled ones" was uncontradicted. The trial court found Employee's testimony credible, and we are in no position to second-guess that finding. *See Tryon v. Saturn Corp.*, 254 S.W.3d 321, 327 (Tenn. 2008). We note too, as the trial judge did, that Ms. Henry, the training coordinator, did not believe that Employee committed an act of violence, one of the two categories of conduct prohibited by Employer's policy.[3]

In arguing that the trial court's decision should be reversed, the dissent focuses on the restraint aspect of Employer's policy. As far as this record shows, however, the customer could have simply gotten off the cart and walked away. Instead, she suddenly turned and punched Employee in the face, knocking her out. This is not to suggest the dissent's interpretation of the record or application of the facts to the law is unreasonable. But neither is the trial court's. "While we will set aside a discretionary decision if it rests on an inadequate evidentiary foundation or if it is contrary to the governing law, we will not substitute our judgment for that of the trial court merely because we might have chosen another alternative." *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000). Consistent with this established principle, we decline to substitute our judgment for that of the trial judge based on this record.

In short, absent an abuse of discretion[4] or a violation of the other criteria found in section 50-6-217(a)(3), the trial court's decision will not be disturbed on appeal. And, as noted above, there is a statutory presumption that "the findings and conclusions of the workers' compensation judge are correct, unless the preponderance of the evidence is

---

[3] The other category of prohibited conduct, possession of a weapon, is not at issue.

[4] "The abuse of discretion standard does not allow the appellate court to substitute its judgment for that of the trial court, and we will find an abuse of discretion only if the court 'applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employ[ed] reasoning that causes an injustice to the complaining party.'" *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011) (citations omitted).

otherwise." Tenn. Code Ann. § 50-6-239(c)(7). Having carefully considered the record, we cannot say that the evidence preponderates against the trial court's finding that Employee did not violate Employer's Violence-Free Workplace Policy, making it unnecessary for us to address the trial court's additional finding that Employer failed to carry its burden of proof regarding the elements of willful misconduct as mandated by Tennessee Code Annotated section 50-6-110(b).

### D. Other issues

Finally, Employer contends that the trial court "improperly considered hearsay evidence and did not consider contrary sworn testimony properly." Employer does not identify the hearsay evidence that the trial court purportedly erred in considering or otherwise elaborate on its assertion.[5] Nor does Employer identify the "contrary sworn testimony" the trial court purportedly failed to properly consider.

As stated by the Tennessee Supreme Court, "[i]t is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Sneed v. Bd. of Prof'l Responsibility of the Supreme Court of Tenn.*, 301 S.W.3d 603, 615 (Tenn. 2010). Consistent with this settled principle, we decline to speculate on what evidence Employer might be referring to or to otherwise sift through the lengthy record in search of evidence that might support Employer's conclusory claims of error. *See Adams v. Gardino*, No. W2011-00773-COA-R3-CV, 2012 Tenn. App. LEXIS 644, at *4 (Tenn. Ct. App. Sept. 17, 2012) ("This Court will not blindly search the record to determine if any errors were committed.").

### Conclusion

For the foregoing reasons, we hold that the evidence does not preponderate against the trial court's decision at this interlocutory stage of the case. Nor does the trial court's decision violate any of the standards set forth in Tennessee Code Annotated section 50-6-217(a)(3). Accordingly, the trial court's decision is affirmed. The case is remanded for any further proceedings that may be necessary.

_Marshall L. Davidson, III_

**Marshall L. Davidson, III**
**Presiding Judge**
**Workers' Compensation Appeals Board**

---

[5] Neither party has filed a brief or other document explaining their positions on appeal as permitted by Section 5.3 of the Board's Practice and Procedure Guidelines.

9

FILED

July 2, 2015

TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD

Time: 9:40 AM



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
# WORKERS' COMPENSATION APPEALS BOARD

Employee:  Eden Johnson ) Docket No.  2014-06-0069
 )
Employer:  Wal-Mart Associates, Inc. ) State File No.  85475-2014
 )
 )
Appeal from the Court of Workers' )
Compensation Claims )
Kenneth M. Switzer, Chief Judge )

---

## Opinion Concurring in Part and Dissenting in Part

---

Timothy W. Conner, J., concurring in part and dissenting in part.

While I agree with the majority opinion on all other issues, I respectfully dissent with respect to whether Employee's conduct constituted a violation of Employer's violence-free workplace policy and whether Employer successfully established the elements of its willful misconduct defense.

### A. Violation of Employer's Violence-Free Workplace Rule

It is undisputed that Employer had a written rule called the "violence-free workplace policy."  That policy expressly prohibited "all associates who work for Walmart Stores, Inc." from engaging in "any conduct or communication (whether direct or indirect) which: . . . restrains or confines another person."  In concluding that Employee "did not violate the Violence-Free Workplace Policy," the trial court reasoned that "[t]he video does not clearly show her touching [the customer]."  The court found it "particularly compelling" that one of Employer's witnesses "testified that, from what she could see in the videos, she did not think that [Employee] committed an act of violence."  However, the written policy is clear and unambiguous.  It prohibits "*any conduct* or communication (whether direct or indirect) which: . . . *restrains* . . . another person" (emphasis added).  It does not require any physical contact to constitute a violation.

1

Moreover, with respect to the testimony of Employer's representative, the pertinent question is not whether Employer considered Employee's actions to be "an act of violence." Instead, the question is whether Employee's actions constituted a violation of Employer's violence-free workplace rule. As will be discussed in more detail below, Employee's own admissions during the expedited hearing established her violation of the rule.

*B. Employer's Willful Misconduct Defense*

In *Mitchell v. Fayetteville Public Utilities*, 368 S.W.3d 442 (Tenn. 2012), the Tennessee Supreme Court adopted the elements of the willful misconduct defense as recommended by Professor Larson. "Because *Larson's* four-step test establishes straightforward guidelines for evaluating claims of willful misconduct . . . , we choose to adopt the standard for this and future cases involving these statutory defenses." *Id*. at 453.

Thus, to prevail on a willful misconduct defense, an employer has the burden to establish the following:

1. The employee's actual, as opposed to constructive, notice of the rule;
2. The employee's understanding of the danger involved in violating the rule;
3. The employer's bona fide enforcement of the rule; and
4. The employee's lack of a valid excuse for violating the rule.

*Id*. As noted by the Court in *Mitchell*, it is not necessary for an employer to prove any element of "perverseness" on the part of the Employee with respect to the alleged willful violation of Employer's rule. *Id*.

In evaluating Employer's willful misconduct defense in the present case, it is necessary to address each of the four elements as set forth in *Mitchell*. First, Employee admitted that she received training regarding Employer's policies during orientation. She admitted that she received instruction concerning Employer's violence-free workplace policy. She admitted that she signed a document acknowledging her receipt of the policy. In fact, she initialed the line on the document specifically identifying the violence-free workplace policy. Employee testified as follows:

Q.      So you were aware of the company's violence-free workplace policy --

A.      Right.

Q.      -- at that time. Correct?

A.      Right.

2

Although Employee attempted to excuse her conduct by stating that she had not "studied" the policy, it cannot reasonably be argued that she was unaware of it. Therefore, Employer established Employee's actual knowledge of its violence-free workplace policy.

Next, Employer must establish that Employee understood the danger involved in violating the rule. In the first paragraph of the written policy, employees are informed that "Walmart is committed to providing a safe and violence-free workplace and shopping location for our associates, suppliers and customers/members. You should help maintain an environment that is free of harassment, violence and threats of violence." Employee testified as follows:

Q. So you understood that this was the policy of Walmart with regard to violence related to the workplace. Correct?

A. Yes.

Q. Okay. You recognized and understood that prior to the October 28, 2014, incident that we're here about today. Correct?

A. You – you what?

Q. You understood that that policy applied to Walmart associates –

A. Yes.

Q. -- prior to the time of the October –

A. Yes.

. . .

Q. Ms. Johnson, isn't it true that that policy very clearly states that any conduct or communication, whether direct or indirect, which either, one, harms, damages, injures, harasses, intimidates, bullies, threatens, stalks, taunts, forces, coerces, restrains, or confines another person, or, two, reasonably causes another person to fear for his or her health or safety, or, three, intentionally harms or damages property is prohibited by that violence-free workplace policy? Is that –

A. Right.

. . .

3

Q. And, Ms. Johnson, you understood that policy was in place and intended to protect employees from dangerous contact with other employees and dangerous contact with the public. Is that correct?

A. Right.

Such testimony establishes Employee's understanding of the danger involved in violating the rule.

Third, Employer's representatives testified without contradiction that Employer engaged in bona fide enforcement of its violence-free workplace policy:

Q. With regard to the violence-free workplace policy, does Walmart have a history of enforcing that workplace rule?

A. Absolutely.

. . .

Q. Have there been other incidents where Walmart associates at your store on Dickerson Pike have been subject to that discipline for violations of the violence-free workplace policy?

A. Yes. We've had people to be terminated because they were fighting on the parking lot. We've had people to be terminated because they slashed people's tires. We've had people terminated because they were arrested outside of work and didn't report it. We still have people on suspension awaiting the outcome of this violence-free workplace [policy].

Employee offered nothing to rebut the testimony of Employer's representative regarding bona fide enforcement of the policy. Thus, Employer satisfied the third element of the defense.

Finally, Employer must establish that Employee lacked a valid excuse for the violation of the rule. Employee testified that she believed it was within her job duties as a greeter to "oversee" the use of the motorized carts. Employee further testified that she believed she was supposed to restrict the use of the carts to customers with disabilities. Employer's representatives testified that it was not within Employee's job description to restrict the use of the motorized carts to disabled customers, but, for purposes of this analysis, it is assumed that Employee had a reasonable basis for her understanding of her responsibilities concerning the motorized carts.

When the customer in question made it clear that she intended to use the

4

motorized cart despite Employee's objection, Employee asked the customer to wait while she sought the assistance of the manager. Employee then testified as follows:

Q.     Did you restrain or attempt to restrain [the customer]?

A.     I followed her bec – she told me – she promised to stay, not to drive the – the cart and she did. And she was sup – and she lied and said that –

. . .

Q.     You did state that you held onto the back of the motorized cart, the mart cart I believe they're called, and tried to stop her from continuing on in the –

A.     Yes.

Q.     -- cart.

A.     -- I did.

. . .

Q.     Okay. Would you not describe that as restraining or attempting to restrain [the customer] from continuing on into the store?

A.     Yes.

Thereafter, Employee's testimony on this issue continued as follows:

Q.     But you had already walked away in the other direction from the direction that she was going on the –

A.     Right.

Q.     -- motorized –

A.     Right.

Q.     -- cart. Correct?

A.     Right.

Q.     So you then had to stop where you were going to see a manager and walk and chase her down to try to stop her from getting on –

5

A.      Yes.

Q.      -- that cart.

A.      Uh-huh.

Q.      Okay.  So you walked with the intention of going to stop [the customer] from continuing on the motorized cart into the store?

A.      Yes.

Q.      You, by your statement, at least grabbed the handlebar and/or the back of the mart cart in an –

A.      Right.

Q.      -- attempt to stop her from –

A.      Yes.

Q.      -- continuing on –

A.      Yes.

Thus, Employee's own testimony establishes her violation of Employer's violence-free workplace rule.  While it was reasonable for Employee to seek the assistance of a manager when the customer indicated her intent to use the motorized cart over Employee's objection, it was not reasonable for Employee to decide to chase after the cart and grab onto it in order to restrain the customer.  Employee has offered no valid excuse for this action.  Her claim that her action was "within the policy," since she was responsible for the motorized carts, does not hold up under scrutiny.  There is no evidence that the customer was damaging Employer's property or causing danger or a threat of danger to Employee, the customer, or others in the vicinity.

Tennessee law no longer allows a liberal or remedial interpretation of the statute in favor of an injured worker.[1]  Section 50-6-110(a) provides that "[n]o compensation shall be allowed for an injury or death due to: (1) The employee's willful misconduct." Tenn. Code Ann. § 50-6-110(a) (2014).  Although the standard of proof at an expedited hearing is different than that at a compensation hearing, *see* Tennessee Code Annotated section

---

[1] Tennessee Code Annotated section 50-6-116 (2014) provides that "this chapter shall not be remedially or liberally construed but shall be construed fairly, impartially, and in accordance with basic principles of statutory construction and this chapter shall not be construed in a manner favoring either the employee or the employer."

50-6-239(d)(1) (2014), an employee cannot recover benefits at an expedited hearing if the employer proves the elements of an affirmative defense. Since I believe that Employer in the present case successfully established the elements of its willful misconduct defense, I conclude that Employee's claim should have been denied. Therefore, I respectfully dissent.

_____
Timothy W. Conner, Judge
Workers' Compensation Appeals Board

7